47 CCPA

In re Richard L. ELLIOTT and Carl R. Joslyn.

Patent Appeal No. 6481.

United States Court of Customs and Patent Appeals.

Feb. 9, 1960.

States Patent Office affirming the final rejection by the Primary Examiner of claims 1, 3 to 6, inclusive, 8, 11, 12, 14, and 18 of appellants' application for a patent on a radio shielding conduit and method of making it, as unpatentable over prior art.

Claims 1, 4, and 11, which are representative of the appealed claims, read:

"1. A flexible conduit comprising a plurality of braided wire tubes telescoped to form a multiply metallic hose, a lining of flexible non-porous material in said hose, and a layer of said material between adjacent tubes, said lining and layers being interconnected by said material through the walls of the braided wire tubes.

"4. A flexible conduit comprising a plurality of braided wire tubes telescoped to form a multiply metallic base, and a unitary mass of solid flexible material lining said hose and filling the voids in and between the walls of said tubes.

"11. The method of lining and impregnating the porous walls of a conduit which comprises filling the conduit and the voids in the walls of the conduit with sluggish fluid compound, suspending the conduit with its axis vertical to permit drainage of excess compound to leave a central passage, and baking the treated conduit to cure the compound retained thereon."

Bauer & Seymour, New York City (Dale A. Bauer, New York City, of counsel), for appellants.

Clarence W. Moore, Arthur H. Behrens, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPAT-RICK.[1]

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals of the United

The references relied on are

| | | |
|---|---|---|
| Webb | 2,147,824 | February 21, 1939. |
| Skoning | 2,338,266 | January 4, 1944. |
| Carlson | 2,494,470 | January 10, 1950. |
| Hill et al. | 2,611,930 | September 30, 1952. |
| Shive | 2,647,296 | August 4, 1953. |
| British Patent | 576,551 | April 9, 1946. |

Science Newsletter, Vol. 52, No. 1, p. 4, July 5, 1947.

---

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* *O'Connell*, pursuant to provisions of Section 294(d), Title 28 United States Code.

Appellants' application discloses a shielding conduit for ignition systems comprising a plurality of co-axial braided wire tubes forming a metallic hose, each strand of the tubes being made up of small wires laid side by side to simulate a wide strip. The wire tubes are impregnated with a flexible non-porous material, which may be a vinyl compound, which forms a lining inside the innermost wire tube, extends through the interstices of the braid and forms thin continuous layers between adjacent tubes. It may also form a coating over the outermost wire tube.

The application also discloses a method of making the conduit which comprises deaerating a body of the impregnating material in liquid form, immersing the telescoped wire tubes in it for a sufficient time to permit complete permeation of the entire wire structure by the liquid, while maintaining the liquid under a vacuum, removing the conduit and draining it while suspended in a vertical position. The impregnating compound is then removed from any portions which are not desired to be coated and the tube is baked to cause the compound to set. The inner surface of the innermost metal tube is preferably wetted with a suitable primer prior to immersion.

The British patent discloses a method of making a reinforced high pressure tubing which comprises surrounding a tube of a vinyl compound such as polyvinyl chloride by one or more sleeves or layers of braided metal wire, heating the tube to soften it and subjecting its interior to pressure so that the wires will sink into the softened material and become wholly or partially embedded therein. If desired, the outer surface of the tube with its embedded wire layer or layers may be lacquered or a thin tube of thermoplastic material may be extruded over it. The patent also states that a rubber-like material such as neoprene or butadiene rubber may be used instead of polyvinyl chloride.

The Skoning patent shows a coating and impregnating apparatus in which a tube of fibrous flexible material, in a flattened condition, is passed through a tank containing resinous material in a liquid state, after which it enters a doctoring device which shapes it to circular cross-section, smooths the coating on the surfaces and removes excess liquid. The tube then passes vertically upward to and through a heat treating and curing chamber and a cooling chamber.

The Shive patent discloses a method in which fabric tubing is passed vertically through a body of plasticized polyvinyl resin, after which it passes vertically through a heating zone and is then allowed to cool.

The Webb, Carlson, and Hill et al. patents were cited as showing it to be old to deaerate an impregnating material and the porous base to which it is applied, by means of a vacuum.

The Science Newsletter publication was cited to show the use of a thin plastic layer as a priming coating in connection with the painting of metal surfaces.

Claims 1, 3 to 6, inclusive, and 8 were rejected on the British patent. As above noted, that patent discloses an embodiment comprising a plurality of telescoped braided wire tubes which may be completely embedded in a conduit of thermoplastic flexible non-porous material and "covered by a thin tube of thermoplastic material extruded thereover." It is evident that with such an arrangement the plastic material forming the inner lining and that forming the outer covering of the tube would be united by the plastic in which the wire lawyers are embedded, to form a unitary mass.

It is appellants' position that the process described by the British patent results only in softening the plastic sufficiently to enable it to penetrate the spaces in the wire tubes in the form of a multitude of distinct projections and that such an arrangement does not result in layers of such material between adjacent tubes, as called for by claim 1. We agree with the board that the distinction thus urged is one of degree only, involving nothing unobvious.

As was pointed out by the board, the interstices of the wire layers of the reference would, in all probability, be in scrambled relationship so that the extruding plastic would be parted and would not extend from the inner plastic layer to the outer one in a number of disinct projections. Whether the plastic would be diffused sufficiently to form continuous layers between the wire mesh tubes would depend upon the nature of the plastic and the temperature to which it was heated, as well as upon the type of wire mesh used. In any case, however, there would be substantial amounts of plastic throughout the spaces between the mesh layers and, in our opinion, it is not of patentable moment whether such plastic unites to form continuous layers. Even if continuous layers are not formed the plastic serves to unite the outer coating, the wire layers, and the inner lining to form a unitary structure.

Appellants point out in their brief that the tube of the British patent is not designed for radio shielding, but there is nothing in the appealed claims which would limit them to such use.

Claim 1 is fully met by the British patent except for its reference to layers of non-porous material and since we do not regard such layers as constituting a patentable feature, the rejection of claim 1 will be affirmed.

Claim 3 adds to the combination of claim 1 a non-porous coating covering the external surface of the hose and bonded to a layer thereof through the wall of the outermost wire tube. Except for the previously considered reference to a layer, this additional feature of claim 3 is fully satisfied by the extruded outer layer disclosed by the reference.

Claim 4 does not recite layers but merely calls for a unitary mass of solid flexible material lining the hose and filling the voids between the wire tubes. This is substantially what is set forth in claim 1 and we regard claim 4 as unpatentable for the reasons given in connection with claim 1.

Claim 5 adds to claim 4 the statement that each strand of braided hose "consists of a plurality of small wires laid side by side to simulate a flat strip." The board noted that such arrangement had not been argued as contributing any critical novelty to the relationship and, in our opinion, it represents an obvious choice of design. It is stated in appellants' brief that such strands, if used in the British patent, would not readily cut grooves in the plastic material and that, therefore, a satisfactory tube could not be produced. There is no evidence of record to support that contention and we must look to the record rather than to the briefs for evidence as to matters of fact, In re Burns, 83 F.2d 292, 23 CCPA 1091.

Claim 6 adds to claim 4 the feature of "at least three braided tubes." This clearly involves nothing unobvious in view of the disclosure in the British patent of the use of "more than one" such tube. It is within the province of one skilled in the art to select whatever number he considers most desirable.

Claim 8 states that the material which lines the tube and fills the voids in the combination of claim 4 is "rubber-like." As above noted, the British patent suggests the use of material of that character.

Since claims 3 to 6, inclusive, and 8 add nothing unobvious to what is recited by claim 1, the rejection of those claims will also be affirmed.

Claims 11, 12, 14, and 18 are drawn to methods of lining and impregnating the porous walls of a conduit. The broadest of these is claim 11 which recites the three steps of filling the conduit and the voids in its walls with sluggish fluid compound, suspending the conduit in a vertical position to permit drainage, and baking the treated conduit to cure the compound retained on it.

Claim 11 was rejected on the Skoning patent which, as above noted, discloses a process in which a porous tube passes through a liquid in a generally flattened condition and is then suspended in a ver-

tical position, after which it passes through a heated chamber where the liquid remaining on it is cured. These are essentially the steps set forth in claim 11.

Appellants argue that Skoning does not fill his conduit since it is in a flattened condition when it passes through the liquid. It is evident, however, that the liquid passes through the walls of the conduit and enters its interior, since the patentee states that both the inner and outer surfaces of the tube are treated with liquid. It would appear, therefore, that the space within the flattened tube would be filled with liquid, and it is to be noted that the patent drawing shows the tube as being partially opened before it leaves the liquid, although it is still not circular in cross-section at that time. Claim 11 does not state that the tube is circular in cross-section when it is filled or at any other time and, accordingly, that matter is immaterial so far as the claimed combination is concerned.

Skoning clearly shows the steps of suspending the impregnated tube in a vertical position and baking it to cure the compound retained on it. This suspension would permit draining of any excess compound on the surfaces of the tube. It is probable that Skoning's doctoring device would remove much of the compound, so that there would not be as much to drain as in appellants' process, but this does not alter the fact that draining is permitted, which is all the claim calls for.

Appellants also argue that Skoning's impregnating compound is not "sluggish" within the meaning of claim 11. However, the patentee states that his compound "becomes extremely tacky at room temperature" and that it is heated to a temperature at which it will "flow satisfactorily." The exact degree of such heating would be determined by the kind of tubing used and the nature of the treatment desired, but in our opinion it would be obvious to use the liquid in a "sluggish" condition, especially since

"sluggish" is a relative term which is not precisely defined in appellants' application. For the reasons given, we hold that claim 11 presents no patentable distinction over the Skoning patent.

Claim 12 adds to the process of claim 11 the step of deaerating the impregnating fluid under vacuum prior to filling the conduit with it. Deaeration of a body of impregnating fluid is common as shown by the Webb, Carlson, and Hill et al. patents and it would be obvious to employ that feature in the Skoning process. Whether the deaeration takes place before or during the impregnating step, or both, is a matter of choice. Accordingly, the rejection of claim 12 on Skoning in view of Webb, Carlson, and Hill et al. will be affirmed.

Claim 14, which specifies that the impregnating fluid is a dispersion of polyvinyl chloride polymer and is reduced to an elastomeric vinyl compound by baking, was rejected on Skoning in view of Shive on the ground that it would be obvious to substitute for the impregnating fluid of Skoning the polyvinyl chloride employed by Shive. We agree with the Patent Office tribunals as to this, especially in view or the similarity of the Shive and Skoning processes.

Claim 18 recites broadly the application of a primer to the internal surface of the hose to promote adhesion of the impregnating fluid thereto. The use of primers for the purpose of promoting the adhesion of a liquid coating to a solid is conventional and is shown, for example, by the Science Newsletter publication. We are unable to find anything unobvious in the use of such a primer on the tube used in the Skoning process.

We have carefully considered all the arguments fully presented on behalf of appellants, but in our opinion the appealed claims are unpatentable over the references on which they were rejected. The decision of the Board of Appeals is affirmed.

Affirmed.