52 CCPA

**Application of Bernhard W. A. WEBER and Hugh D. McLeese.**

**Patent Appeal No. 7291.**

United States Court of Customs and Patent Appeals.

Feb. 18, 1965.

Carl G. Seutter, Herbert H. Goodman, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from a decision of the Board of Appeals affirming the examiner's rejection of claims 1 through 17 of appellants' application Serial No. 827,-714, filed July 17, 1959, for Chemical Process and Product.

The application relates to an improved process in the field of applying chromium, chromate conversion coatings, and chromate anodizing coatings, and more particularly to an improved process of adding chemicals to aqueous chromic acid baths. The chemicals, which may be chromic acid or chromic acid-containing materials including additives such as strontium sulfate and potassium silicofluoride, are dusty and toxic, and when they are added to baths from a bag or drum, "dusting" becomes a severe health and corrosion problem. When powdered chromic acid-containing materials are added to a bath, they often settle to the bottom in a mass and do not readily dissolve. Some formulations are more hygroscopic than chromic acid itself and

when they cake in their storage container, it somewhat reduces the dusting problem because lumps of material may be added to the bath. The lumps, however, must be physically broken and the bath agitated to dissolve them.

Appellants' state that they solve those problems by adding the chromic acid-containing materials to the bath in the form of small compact pellets. It is stated that when pellets containing chromic acid, or chromic acid with additives, are added to water or to replenish a chromic acid bath, they dissolve quickly and there is no dust problem.

Claims 1 and 9, which are representative, read:

"1. A process for adding chromium to an aqueous chromic acid bath comprising incorporating in the aqueous bath pre-formed chromic acid pellets at least 1/8" long in the smallest diameter.

"9. A composition of matter for making up and for maintaining chromic acid baths comprising pre-formed chromic acid pellets at least 1/8" long in the smallest diameter."

The references are:

| | | |
|---|---|---|
| Willcox | 309,117 | December 9, 1884 |
| Huber | 593,100 | November 2, 1897 |
| Brown | 2,750,334 | June 12, 1956 |
| Harris | 2,905,546 | September 22, 1959 |
| | | (Filed December 5, 1957) |

———◆———

Willcox discloses that there are various granular or powdery and pasty substances that have to be massed together or molded into forms in order that they may be better utilized either directly or in manufacture. Among the substances mentioned are coal dust, charcoal dust, coke dust, wood dust, resinous powders, cement materials, artificial stone materials, and mineral, metallic and ore powders.

Huber relates to compressing powdered or granular materials into the form of disks or tablets and discloses a machine for that purpose.

Brown describes chromic acid bath compositions for electrodeposition of chromium.

Harris discloses processes for the chemical upgrading of chromium bearing materials. It states it is advantageous to pelletize mixed reducing agent and chromite material to get more effective reduction in a roasting process and also to decrease the dusting of the material as it is roasted.

The examiner considered the claims obvious over the prior art, holding them unpatentable over Brown in view of Willcox or Huber. His view was that, it being known to add a chromic acid mixture to acidic chromium solutions as disclosed by Brown, the addition of such material in pellet form would be obvious in view of the teachings of Willcox and Huber because it is well known that pelletizing reduces the dust problem. He referred to Harris as a further showing of the state of the art in its disclosure of the pelletizing of powder containing chromium to reduce dusting.

A first group of affidavits submitted by appellants was also in the record before the examiner. Those affidavits are by four persons with training and long experience in the chromium plating industry. The affidavits include reference to caking of chromium-containing materials as resulting in chunks being dropped into the tank and causing splashing on workers or their clothes and statements that the materials were also subject to dusting. Pelletizing, the affiants state, decreased the amount of caking and dusting, resulting in greater safety, convenience, and lower cost operations.

The examiner did not find the affidavits persuasive of patentability. In particular, he considered the advantages which the affiants assert are attained from the invention to be only the obvious result of employing pellets instead of powdered material.

Subsequent to the examiner's answer, appellants submitted additional affidavits by three of the persons making the first affidavits. The affiants in the later affidavits state in substance that pelleting chromic acid materials and using them in electroplating was not obvious to them and that either they did not believe it was obvious to others in the field or that it "was not obvious."

In affirming, the board agreed with the examiner's reasons for rejecting the claims and further stated:

"After a careful consideration of all the arguments, we are of the opinion that it would be obvious to pelletize powdered chromic acid materials to eliminate the problem of dusting. Pelletizing, as such, is a well-known process and is an expedient commonly resorted to in the elimination of various problems including dusting and caking. The cited Harris patent is illustrative of one application of this expedient. Even if it be determined that the references are from nonanalogous art, their disclosures may not be ignored. There would be no invention in the method claimed if it were within the exercise of the skill of the worker in that art to use an expedient of general application from a nonanalogous art. In re O'Connor, 34 CCPA 1055; 73 USPQ 433; 1947 CD 389; 603 OG 194; 161 F(2d) 221."

Appellants urge that they have solved a problem in connection with the addition of chromium-containing materials to electroplating baths which existed since chromium plating started. The affidavits, they contend, "clearly and conclusively establish" that the solution achieved was not one which would have been obvious to a person of ordinary skill in the art under 35 U.S.C. § 103. Appellants further state that the board made no reference to the affidavits "but substituted its own independent appraisal of the problem."

Appellants further urge that the examiner and board concentrated on the problem of dusting in finding the prior art to show their invention obvious, whereas the invention achieved the additional result that pelletizing reduced caking. They also urge that their pellets unexpectedly dissolve in aqueous media much more quickly than the prior art flake material.

We find no merit in appellants' contention that the affidavits conclusively establish that their invention would not have been obvious to a person of ordinary skill in the art under 35 U.S.C. § 103. That is the ultimate legal question which the court must decide. So far as the affidavits undertake to tell the court the answer to that question, they are but incompetent expressions of opinion. See In re Chilowsky, 306 F. 2d 908, 50 CCPA 806. Other assertions in the affidavits, such as the statement by an affiant that pelleting was not obvious to him, are at best no more than evidence to be evaluated along with the other evidence of record, including the prior art.

We are satisfied from the entire record that the board did not err in finding that it would be obvious to a person of ordinary skill in the art to pelletize chromic acid materials and use them in plating baths. Certainly pelletizing would be an obvious expedient to reduce dusting, the Harris patent being an example showing the application of that expedient to chromium-containing materials. Additionally, we find no reason for disagreement with the board's conclusion that pelletizing is commonly resorted to in the elimination of various problems, including caking as well as dusting. Appellants contend that elimination of dusting was not the primary problem they faced because, as stated in the affidavit of one Fahy, dusting could be solved by adding water. However,

that affidavit refers to dusting as a problem only with *dry* chromium-containing compounds and it appears that the problem of caking arises from the addition of water to the dry material in powder or flake form to prevent dusting. There seems to be no reason why a person skilled in the art would regard it as unexpected that dry material which was pelletized to prevent dusting, rather than watered for that purpose, would be more free from caking.

Appellants also argue, as an unobvious result, that their pellets dissolve in an aqueous media "much more quickly" than flake material. However, there is no evidence in the record establishing substantial superiority of pellets in that respect and the absence of such supporting evidence is not overcome by the allegations in the brief. In re Elliott et al., 275 F.2d 484, 47 CCPA 807.

The decision of the Board of Appeals is affirmed.

Affirmed.