52 CCPA

### Application of Klaus SCHULZE.
### Patent Appeal No. 7405.

United States Court of Customs
and Patent Appeals.
June 17, 1965.

V. Alexander Scher, George J. Brandt, Jr., New York City, for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals which affirmed the examiner's rejection of claims 8–11 in appellant's application [1] for a "Method of Preparing Bituminous Mixes."

The application relates to a method for coating fine aggregates, such as finely-divided coal particles, with a thin bituminous film. The coated aggregates are used in the production of briquettes. Appellant states that it had been known in the prior art to add steam to bituminous binding compositions used to coat fine coal particles. The steam condensed on the particle surface and reduced the amount of bitumen needed as a binder by increasing its ability to spread on the aggregate. It was found, however, that the condensed water accumulated in void spaces in the coal, tending to form lumps and to prevent uniform coating of the surface with the bitumen. Moreover, since the aggregate particle had to be maintained at a low temperature in order to condense the steam, the bitumen impinging on the particle surface would cool too quickly to enable spreading in the desired manner.

In carrying out his process, appellant forms a zone of floating coal particles,

---

[1]. Serial No. 744,213, filed June 24, 1958.

having a temperature of 200–212°F, above the blades of a rotating impeller. In an example, liquid bitumen at a temperature of 350°F and pressure of 285 lbs/in² and superheated water at a temperature of 350°F and pressure of 290–300 lbs/in² are mixed to form an emulsion and sprayed onto the floating aggregate just after mixing. Upon leaving the spray nozzles, the superheated water under reduced pressure is partly transformed into steam which, together with the minute droplets of atomized water and bitumen, forms a foam. The use of superheated water is said to avert formation of lumps and facilitate the formation of thin films of bitumen on the aggregate particle. Since the main portion of water is added in liquid form in appellant's method, the aggregate may be maintained at a higher temperature than when steam is employed. The process is reflected in claim 8:

8. The method of preparing a bituminous mix, which comprises forming a zone of floating solid particles, feeding a stream of liquefied bituminous binder under pressure to a location adjacent said zone, introducing superheated water at a temperature and pressure corresponding to those of said bituminous binder into said stream, mixing said binder and superheated water at said location, and spraying the mixture of binder and superheated water onto said floating particles, said superheated water being introduced into said binder at a point close to said location.

Claims 9–11 recite a superheated water and bitumen temperature of 350°F and pressure of about 300 lbs/in², and claim 11 further adds that the particle temperature is 200–205°F.

The references are:

| Ditto | 2,283,192 | May 19, 1942. |
| Sommer | 2,572,068 | Oct. 23, 1951. |
| Elod (Gr. Britain) | 683,578 | Dec. 3, 1952. |

Sommer discloses a method of forming a zone of floating solid particles and spraying liquefied plastic or bitumen under high pressure onto the particles to coat them. Sommer recognizes that certain conditions, such as temperature of the bitumen and solid particle, the pressure under which the bitumen is atomized, and the presence or absence of a solvent, may be varied to control the surface tension and viscosity of the coating material and hence the thickness of the coating. An example specifically discloses a solids temperature of 225–250°F, and an asphalt temperature and pressure of 300°F and 275–300 lbs/in² respectively.

Ditto and Elod both disclose formation of a water and liquefied bitumen binder emulsion which is superheated above 212°F and maintained under sufficient pressure to prevent vaporization of the water. In Ditto, the emulsion may be "immediately" sprayed into a chamber where release of pressure causes expansion of the emulsion to a foam and the foam is commingled with a falling solid aggregate, such as pulverized coal. Use of a foam is said to result in a substantial saving of the bituminous binding oil required to coat the aggregate with a thin film. The coated particles are subsequently briquetted in a press. In Elod, the bitumen-water emulsion is also sprayed as a foam onto finely divided coal which is agitated and heated to a temperature over 212°F. Mixing of the particles and binder is affected in rotating drums or cylinders with "transport members" which repeatedly raise and drop the particles. The use of such a foam, as in Ditto, is said to result in a savings of binder.

In sustaining the examiner's rejection of claims 8–11 over Sommer in view of Ditto and Elod, the board noted:

Appellant's improvement over the Sommer patent lies in the addition of "superheated" water to the molten bitumen sprayed onto the "floating" particles of the aggregate. The secondary references show that this is an old expedient and attribute to it a better

coating of the aggregate particles. It would seem to be an obvious procedure to utilize this expedient in the process of Sommer and secure the advantages attributed to it.

\* \* \* \* \* \*

As the Examiner indicates, appellant's process can be regarded, from one point of view, as an improvement over the processes of Elod et al. and Ditto in which the Sommer procedure for contacting an aggregate with a bitumen is substituted for the simple mixing of the Elod et al. and Ditto patents. From this point of view also, appellant's process is believed obvious.

Appellant concedes he was not the first to employ water or steam in the preparation of bituminous mixes. He urges, however, the board erred in disregarding the specific limitations set forth in all the claims that the mixing of liquefied binder and superheated water takes place "close to" a location "adjacent" the zone of floating particles. He also contends that the solids temperature of 200–205°F recited in claim 11, and the bitumen and water temperature (350°F) and pressures (about 300 lbs/in²) recited in claims 9–11 are "important," and that the board erred in not considering them.

We think appellant's contentions lack merit. While it is quite true that such limitations are found in the claims, it seems to us that a sufficient answer to the arguments may be found in appellant's specification, which makes it clear that those limitations are no more than details, culled from a specific example and lacking in patentable significance because well within the skill of the art.

 For example, we do not find the expression "close to" in the claims to patentably distinguish over Ditto, which specifically discloses mixing the bitumen and water in an emulsifying mill and "using it immediately." As the solicitor points out, for aught the record shows, it is immaterial where the mixing takes place. Nor do we find anything in the record by way of disclosure or affidavit that the 200–205°F solid particle tem-

perature is critical or is otherwise patentably distinguishable from the solids temperature of 212°F or higher disclosed by Elod, or the solids temperature of 225°F disclosed by Sommer. Argument in the brief does not take the place of evidence in the record. In re Cole, 326 F.2d 769, 51 CCPA 919. What does appear important, from appellant's disclosure as well as the references, is that the solids temperature be at least 200°F to prevent cooling of the bitumen before it can spread uniformly on the particles. Indeed, appellant discloses in other portions of his specification a temperature range of 200–212°F as suitable. Finally, as noted earlier, Sommer recognizes that the temperature and pressure parameters of the process may be varied as necessary to control the coating thickness.

 Our review of the record, with due regard for appellant's contentions, satisfies us that the board committed no reversible error in concluding "the claimed process would have been obvious to a person of merely ordinary skill in the subject art from a consideration of the references relied upon."

Affirmed.