55 CCPA

**Application of John S. METCALF, Charles E. Miller and Roy C. Olney.**

**Patent Appeal No. 7939.**

United States Court of Customs
and Patent Appeals.

May 2, 1968.

Donald R. Motsko, Hamden, Conn., for appellants.

Joseph Schimmel, Washington, D. C., (Fred W. Sherling, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRK-PATRICK,* Judges.

SMITH, Judge.

The sole issue involved in this appeal from the Patent Office Board of Appeals[1] is whether appellants' claimed subject matter is obvious under the conditions stated in 35 U.S.C. § 103.[2]

The board refused to sustain the rejection for the reasons stated by the examiner, and restated the rejection as a new ground of rejection under Rule 196(b). Upon reconsideration, the board adhered to its statement of the rejection, and this appeal followed.

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. The board consisted of Messrs. Federico and Rosa, Examiners-in-Chief, and Stone, Acting Examiner-in-Chief. Mr. Stone wrote the opinion of the board.

2. Claims 21, 27, 29, and 32–36 in appellants' application Serial No. 135,569, filed September 1, 1961 for "Plastic Working Process and Shot Shell." No claim has been allowed.

In general, appellants' invention related to a process for cold working a crystalline thermoplastic material to obtain an increase in the tensile properties of the material. It is appellants' position that the invention provides a solution to a particular problem in the art of making shotgun shells.

Appellants explain that the art had attempted to use rigid linear polyethylene in an attempt to overcome certain disadvantages of using various other plastics and separate components, such as paper, in the manufacture of shotgun shells. One approach described in the specification refers to an attempt to make the entire shotgun shell casing as one piece, molded from linear polyethylene having a high degree of crystallization, a melting point of at least 125° C and a relatively high density. Such articles, made by injection molding a piece of the linear polymer, are said to fail at normal and low temperatures when the rate of tensile strain is high instead of elongating and recovering for extraction from the gun barrel as a sound piece.

Thus, according to the invention as described in appellants' specification, articles of manufacture, such as shot shell bodies, are formed at least in part by compression from certain plastic materials, such as polyethylene or polypropylene. High density linear polyolefins specifically are contemplated for forming by what appellants state is "compression as distinguished from forming by stretching." By confining the plastic between at least two juxtaposed surfaces and exerting pressure upon the plastic, a thin-walled body may be formed in the solid crystalline state from a relatively thick slug or blank of the linear polymer to attain a high increase in the strength of the body.

It is explained that this process is performed at a wide range of working temperatures below the crystalline melt temperature of the material and at speeds intended to prevent an excessive rise in temperature. Appellants explain that:

\* \* \* By compression forming according to this invention, shaping of an article by deformation can occur over a broad range of temperatures below the crystalline melt temperature rather than in a sharply limited narrow range of temperature hovering extremely closely to such crystalline melt temperature, and difficult to maintain. By compressive deformation instead of stretching, necking of the thermoplastic is avoided and very high tensile strength is obtained where needed. Compression forming also allows other parts of the finished article also to be made to finished dimensions, an advantage which is not secured when material must be stretched out of one part to supply another. \* \* \*

### The Appealed Claims

In its broadest aspect, appellants claim a process for cold working crystalline plastic to obtain an increase in tensile properties. Claim 35 is representative:

35. A process comprising the steps of confining a performed blank of a crystalline polyolefinic material in its self-supporting crystalline state in a die cavity,

closing said die cavity with a punch member dimensioned so as to define a space between said punch and die cavity,

and applying sufficient pressure to said blank with said punch to deform into said space while in said state oriented material of substantially increased tensile properties.

Appellants also claim a method for producing a thermoplastic article in one piece. The article includes a base section and relatively thin tubular section elongated to a given length in the axial direction. Claim 29 is thus representative:

29. A method of deforming a blank of crystalline olefinic material into a cylindrical article having a sidewall of

greatly increased longitudinal and circumferential tensile strength relative to the tensile strength of the undeformed blank, said method comprising the steps of

(a) placing a preformed blank of said material into an open die member,

(b) closing said die member with a tapered punch having an exterior dimension somewhat smaller than the interior dimension of said die member so that a space corresponding to the finished size and shape of the cylindrical article exists between the punch and the die member,

(c) bringing said die member into engagement with said blank and applying a compressive force to said blank at a controlled rate so that plastic material from said blank in the solid crystalline self-supporting state is compressively forced into said space to form said sidewall,

(d) and maintaining said material at a temperature below its crystalline melt temperature so that the plastic material compressively forced into said space is oriented and increased in longitudinal tensile strength to a value at least twice that of the undeformed blank.

The prior art references relied upon by the board are:

| St. Clair | 2,070,242 | Feb. 9, 1937 |
|---|---|---|
| McGlamery | 3,083,410 (Filed Nov. 23, 1956) | Apr. 2, 1963 |
| Esselmann et al. | 3,173,977 (Filed Nov. 15, 1955) | Mar. 16, 1965 |

St. Clair discloses the production of a hollow tubular structure by forcing a rod-like plunger into a solid stock thermoplastic material formed of a cellulose ester such as nitrocellulose. The reference discloses that the material is heated to a sufficient plasticity to cause it to flow under pressure while its temperature is preferably maintained below the point where it becomes liquid. The reference also describes the tendency of the blank to retain its shape but to flow into and assume a different form under pressure, which assumed shape is retained after release of pressure.

The McGlamery patent discloses that the tensile strength of crystalline polyethylene polymers is increased by a cold working step such as a rolling operation. McGlamery achieves his result by a "severe milling step" at temperatures below the softening point of the polymers. He adds that the polymers to which his invention applies are partially characterized by a softening temperature of at least 240° F. and refers to "softening temperature" in terms of the ability of the polymer to support a standard load or withstand a force at elevated temperatures without substantial deformation.

Esselmann discloses that the cold drawing of a polyolefin, such as a polyethylene, materially increases the strength of the resulting product. Esselmann indicates that the polyolefin is stretched at a temperature ranging from just below the flow point of the polymer to about 90° C below the flow point.

### The Rejection

The examiner had rejected the claims as "unpatentable over St. Clair alone or in view of Green.[3]" The board reversed the decision of the examiner, stating:

\* \* \* The Examiner states that the process of St. Clair "can obviously

3. Patent No. 2,408,630, issued October 1, 1946.

be used to shape any thermoplastic material" and therefore concludes that it would be obvious to cold work polyethylene to obtain an increase in strength of the final product. We do not agree with the Examiner's holding in this connection. *We find no recognition of increasing the strength of the final product by a cold working operation in either the St. Clair or Green patents.* Under these conditions, we will not sustain the rejection of claims 21, 27, 29 and 32 to 36 on the prior art as developed by the Examiner. [Emphasis added.]

The board entered a new rejection of the claims under Rule 196(b), stating:

> However, in view of the teachings of McGlamery or Esselmann et al. that cold working of crystalline polyethylene materially increases the strength thereof, it would be obvious that the substitution of crystalline polyethylene in the St. Clair process would produce an article of increased strength. Accordingly, under the provisions of Rule 196(b) we reject claims 21, 27, 29 and 32 to 36 as unpatentable over St. Clair in view of McGlamery or Esselman [sic] et al.

*Opinion*

Appellants raise no objection here to the board's recognition that St. Clair discloses a process wherein a blank of material heated to a certain degree of plasticity can be compressed in a die and deformed by a plunger to form either a solid or tubular object. They contend that the reference shows an "old and well-known compression molding process" which is a "hot forming process wherein the formed article must be cooled in a separate step before removal from the mold."

Appellants assert, however, that St. Clair fails to disclose that a crystalline linear plastic material can be cold formed in its solid crystalline self-supporting state under certain steps to produce a hollow, cylindrical object having a tensile strength three to five times the tensile strength of the starting material. They argue that such a product can only be produced if the deforming operation is carried out below the crystalline melt temperature of the material in a fully enclosed die cavity when a blank of the material, in its solid self-supporting state, is compressively deformed by a punch and the material is required to flow under great pressure into a fully enclosed cavity formed between the die and the punch. We initially observe that not all of appellants' claims are so definitive.

Appellants also agree with the general proposition stated by the board that the cold working of crystalline polyethylene by rolling, stretching or drawing will produce an increase in tensile strength. They argue that:

> * * * If one were to substitute crystalline plastic material, as suggested by the Board of Appeals, for the nitrocellulose plastic disclosed in St. Clair and heat the material to bring about the consistency required to meet the other conditions set forth in the St. Clair reference, he would fully, clearly and obviously wind up with exactly the same type of product which St. Clair did. Unfortunately, there would be no increase in tensile strength or orientation since the crystalline plastic material disclosed and claimed by Appellants, if heated to the highly flowable condition described by St. Clair, would not and could not become oriented and its tensile strength would not be increased. * *

However, notwithstanding the statement of the board, obviousness under 35 U.S.C. § 103 is not determined solely by a test of whether it would be obvious for one of ordinary skill in the art to physically substitute the material of McGlamery or Esselmann for the material disclosed in the St. Clair process. Rather, the test is whether it would have been obvious to one of ordinary skill in the art to do what appellants have done given the *teachings* of the prior art references. The teachings of references are not to be as narrowly construed as appellants would have us

do, i. e., limit them to what they disclose directly. Under 35 U.S.C. § 103, proper prior art references are to be considered for all subject matter fairly disclosed either alone or together for what they teach the worker of ordinary skill in the art and from this consideration the legal conclusion of obviousness or non-obviousness is to be drawn.

Here, we think one of ordinary skill in this art would be aware of the obvious modifications which he could make in the St. Clair process in the light of the teachings of either McGlamery or Esselmann. Since the art evidenced by either of these two "secondary" references teaches that cold working of polyethylene increases its tensile strength, it would be obvious to utilize the steps of St. Clair modified in the light of the clear teachings of McGlamery or Esselmann to control the temperature of the product being worked.

Thus, we disagree with appellants' argument that:

The knowledge imparted by the secondary references that crystalline plastic can be cold worked by drawing or rolling does not lead one to the substantial modifications required to the St. Clair process to convert it to a cold working compression forming process. That one would even consider any modifications to, or substitutions in, the St. Clair process in view of the teachings of McGlamery or Esselmann is purely conjectural without the benefit of Appellants' disclosure.

We do not agree with the Examiner's characterization of the affidavits of Wiley and Gray as "incompetent expressions of opinions."

■ Insofar as these affidavits provide evidence to support the legal conclusion of unobviousness under 35 U.S.C. § 103, they must be considered. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 546, (1966); In re Lindell, 385 F.2d 453, 55 CCPA —— (1967); In re Weber, 341 F.2d 143, 52 CCPA 1015 (1965). Statements of

opinion in an affidavit must also be accorded some weight as bearing upon the legal conclusion required by 35 U.S.C. § 103. In re Fay, 347 F.2d 597, 52 CCPA 1483 (1965); In re Ward, 329 F.2d 1021, 51 CCPA 1132 (1964).

■ Here, reviewing these affidavits for both the factual and opinion evidence contained in them, we do not find that they are persuasive on the issue before us.

Accordingly, the decision of the board is affirmed.

Affirmed.