56 CCPA

Application of Rudolf BECKMANN, Erich Behr and Franz Joseph Huster.

Patent Appeal No. 8123.

United States Court of Customs and Patent Appeals.

June 5, 1969.

1. Appearing in application serial No. 281,-856, for "Coating of Surfaces of Cross-Linked Olefin Polymers," filed May 9, 1963 and claiming priority under 35 U.S.C. § 119 of a German application filed May 16, 1962.

2. The Belgian patent is not physically part of the record. Appellants and the

Arnold Sprung, Burgess, Dinklage & Sprung, New York City, attorneys of record, for appellants; Frank M. Murphy, New York City, of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; Raymond E. Martin, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

WORLEY, Chief Judge.

The issue here is whether the Board of Appeals committed reversible error in sustaining the examiner's rejection of claims 1–8 [1] as obvious under 35 U.S.C. § 103 in view of Belgian patent 572,948 [2] to Grimminger.

Appellant's specification defines the problem they and the prior art faced with respect to providing the surface of a cross-linked olefin polymer with a coating of another polymer:

This invention relates to the application of coatings such as varnish

Patent Office agree that Grimminger Canadian patent 662,156, issued April 30, 1963, may be regarded as an English translation of the Belgian patent, although the Canadian patent itself is not available as a reference since it issued subsequent to appellants' German priority date.

coatings to the surfaces of cross-linked olefin polymers.

Commonly, before the application of a varnish coating to the surface to be coated, the surface is subjected to a preliminary treatment so that the varnish will adhere strongly to the surface. Mechanical treatment of the surface is often not practical because of the injury which would occur to the surface. A better approach is to attempt a treatment as will impart cohesiveness to the surface, and this approach is desirable in respect to smooth, hard, and dense plastic surfaces, particularly where the plastic is of polymers which are nonpolar and are saturated. Such treatments have been proposed and included among these are the utilization of a swelling solvent, oxidizing treatments as for example by ozonizing or by use of strong oxidizing acids, the subjecting of the surface to electric discharge at high voltage, or the utilization of the flame contact method. These treatments can condition the surface for application of coatings, such as primer coatings, varnish coatings and the like, by providing at the plastic surface polar and/or unsaturated groups.

In respect to the application of coatings to cross-linked olefin polymers, however, the above-referred to prior art proposals, in general, do not provide satisfactory results.

To solve that problem, appellants coat the surface of a cross-linked olefin polymer, such as polyethylene or polypropylene, with a strongly adhering film of butadiene-styrene copolymer, using the method set forth in representative claim 1:

1. Process for coating a surface of a cross-linked olefin polymer which comprises contacting the surface thereof with an organic peroxide having a tertiary carbon atom and providing on the organic peroxide contacted surface a copolymer of butadiene and Styrene, and maintaining the surface coated with the copolymer at a temperature and for a time sufficient to harden it providing a hardened film of the copolymer strongly adhering to the olefin polymer surface.

According to appellants, "in general, all the organic peroxides suitable for use as cross-linking agents for polyolefins," particularly those with a tertiary carbon atom, may be used in the process, the peroxide apparently functioning as a cross-linking agent to attach the butadiene-styrene copolymer coating to the olefin polymer by primary valence linkages or bonds.

Grimminger too discusses the problem he faced of coating the non-polarized, smooth surface of "untreated" polyethylene or polypropylene substrates with other materials. He states:

Owing to the particular molecular structure of the polymers of ethylene and its homologs it is not easily possible to provide these high polymers with a print, bond or other kind of coating firmly adhering to them. The aforesaid polyolefins are known to consist of linear or branched carbon chains whose macromolecules do not contain polarizable atoms or atomic groups that owing to strong electrical (intermolecular) forces, would be capable of binding artificial materials of a similar or a different kind such as color lakes or adhesives at the wax-like surfaces. Moreover, all commercial articles prepared from the aforesaid hydrocarbons of high molecular weight have a very smooth surface which is practically free from pores and this, too, increases the difficulty * * *. Many processes have been developed for improving the surfaces adhesiveness of the aforesaid macromolecular materials by modifying the surface to be coated prior to the coating by a physical, physico-chemical or chemical pretreatment (singeing, shooting of electrons, radiation with γ- or x-rays, electrical gas discharge, oxidation, halogenation). In all the processes that have hitherto been applied the modification is brought about by the addition reaction of polarizable atoms or atomic groups (or radicals having a

permanent dipole moment) with the hydocarbon chains of the surface of the sample. The characteristic feature of the improved adhesiveness thus obtained is that it is due to the polarity of the pretreated surface, that is to say that it is only brought about by a secondary bond * * *. However, by a pretreatment of this kind the capacity of the material for being welded or subjected to a heat sealing process is in most cases more or less considerably impaired.

Grimminger solved that problem by applying to the "untreated" polyolefin surface a coating material which may be, inter alia, a copolymer of "butadiene and styrene," and subsequently bringing about a cross-linking reaction between the base material and coating. According to Grimminger, cross-linking may be accomplished by (1) applying a free radical-forming organic peroxide—benzoyl peroxide, for example—to the polyolefin surface prior to, or simultaneously with, the application of the coating material, and thereafter heating the composite layers to activate the peroxide, or (2) subjecting the two layers to various forms of radiation capable of producing free radicals.

Grimminger acknowledges that known methods involving radiation and chemicals had previously been used to produce free radicals and cause cross-linking of the molecules in a polyolefin polymer mass, thereby improving mechanical strength, heat resistance and insolubility of the polyolefin. In such processes, Grimminger states, the lifetime of the radicals formed at the surface of the mass is probably considerably shorter than that of the radicals formed in the interior, since the surface radicals possess the capability of reacting with the atmosphere to saturate themselves in contrast to the radicals in the interior which apparently must wait for diffusion to bring adjacent radicals sufficiently close to each other to saturate themselves. As a result, Grimminger observes:

[Quotation I] The known methods provide cross-linking of the macromolecules *in the interior* of the macromolecular material, but the *radicals forming at the surface of the material are no longer capable of reacting and thereby forming primary valence linkages, since, owing to saturation, they are transformed after only a very short time and if a coating is applied it can no longer be bound by atomic (homopolar) linkages.* [Emphasis supplied.]

By contrast, when operating according to Grimminger's disclosed process, "the radicals which are rather short-lived when being formed at the surface of a material are enabled to produce a primary bond between the two layers of the compound material." "The adhesiveness obtained by the process according to the present invention," says Grimminger, "very much excels that produced by the known processes" where reliance is placed on secondary bonds, not primary bonds, to cause the coating material to adhere to the polyolefin substrate.

In the examiner's view, the principal difference between the processes of Grimminger and appellants is that the former employs a polyolefin substrate which is *not* initially cross-linked, whereas appellants employ one which is. The examiner considered the problems of coating a cross-linked polyolefin substrate and a noncross-linked substrate to be the same, and that it would be obvious to use an initially cross-linked polyolefin substrate in the process of Grimminger where the well-known advantages of such a material, as particularly set forth by Grimminger, are desired. The examiner further found that the benzoyl peroxide used by Grimminger met the "organic peroxide having a tertiary carbon atom" called for in the claims. The board agreed.

Here appellants argue that there "is no justification" for the examiner's conclusion that a cross-linked polyolefin substrate presents the same type of coating problem as a noncross-linked or "un-

treated" polyolefin substrate. They refer to the discussion in their specification of the problem they and the prior art faced, quoted earlier in this opinion, for an explanation that, in general, procedures applicable for coating of linear or noncross-linked polyolefins are not applicable to cross-linked polyolefins.[3] Indeed, they feel that Grimminger himself suggests that the procedure of the present claims would not be operative. Relying on the paragraph of Grimminger heretofore denoted "Quotation I," appellants urge that:

It is a clear indication of the reference that the surface of a cross-linked olefin is in such condition that it is no longer capable of reacting in the manner utilized in the process of the reference to bond a coating to the base material. This amounts to an indication that the procedure of the reference is not suitable for application to cross-linked olefin.

The examiner and board did not agree with appellants' interpretation of "Quotation I" from Grimminger. It is the Patent Office position that one of ordinary skill, after reading "Quotation I" in context, would understand that he cannot apply a polymeric coating material to an already cross-linked polymer with the expectation that there would be free radicals still remaining on the surface of the latter to react and effect cross-linking with the coating. In that circumstance, Grimminger says, there are no free radicals left, "since, owing to saturation, they are transformed after only a very short time," possibly through reaction with the atmosphere. The examiner did not think that "Quotation I" teaches one of ordinary skill that the surface of a cross-linked polyolefin would be incapable of being "reactivated" by a second application of free radical-producing chemicals, or that it would preclude applying a peroxide in combination with a coating polymer to an already cross-linked substrate and heating to generate new free radicals at the interface between coating and substrate, stating:

* * * While the presence of free-radicals, formed during the initial cross-linking treatment cannot be taken advantage of, it is clear that the peroxide treatments taught by Grimminger will open up the primary valence bonds and provide free radicals for reaction with the applied coating * * *. The fact that one may not readily take advantage of the free-radicals formed during cross-linking would not deter one skilled in the art from treating to cross-link and then further treating, as taught by Grimminger to adher the coating. Only the expected additive results are obtained.

The board agreed, adding that it is apparent from Grimminger's disclosure in "Quotation I" that at least part of the surface of a cross-linked polymer is not actually cross-linked. Observing that appellants' claims do not specify the degree of initial cross-linking in the polyolefin substrate employed in their method, the board felt it would be obvious to apply to the surface recited in the claims a process operative with surfaces which are not cross-linked albeit to possibly a different extent.

■■ Granted that *some* difference in surface characteristics *may* exist between a cross-linked polyolefin and a noncross-linked polyolefin, it is evident that the examiner and board did not see the significance, if any, of that difference in the present circumstances. Nor do we. The difficulty with appellants'

3. The cited paragraph of the specification does not support appellants' position. As pointed out by the solicitor, and as is clear from that paragraph of the specification, there is no apparent reference to noncross-linked polymers contained therein. It seems to us that appellants are merely stating in that paragraph that the various methods previously used by the prior art to provide cross-linked olefin polymeric substrates with an adherent coating "do not provide satisfactory results." Grimminger found those same methods, which rely on secondary bonding effects, to be unsatisfactory to coat noncross-linked olefin polymer substrates, and proposed his solution therefor.

case, as we see it, is the lack of evidence in the record bolstering their argumentative conclusion as to what "Quotation I" means to one of ordinary skill in this art,[4] and contradicting the plausible interpretation advanced by the examiner and board. We find no support for their contentions that one of ordinary skill would regard it unobvious or unexpected that Grimminger's coating process could be applied to a cross-linked polyolefin substrate as well as to an "untreated" polyolefin substrate. Nor is there any evidence of record to convince us that, as appellants allege, the use of a particular type or species of organic peroxide in combination with the particular coating copolymer of butadiene and styrene is significant or is not suggested by the reference. Argument in the brief does not take the place of evidence in the record on that score. In re Schulze, 346 F.2d 600, 52 CCPA 1422 (1965); In re Weber, 341 F.2d 143, 52 CCPA 1015 (1965).

The decision is affirmed.

Affirmed.

4.  Cf. In re Lemin, 364 F.2d 864, 53 CCPA 1382 (1966).