**Application of Bruno F. LUDOVICI and Gerhard K. Megla.**
**Patent Appeal No. 8900.**

United States Court of Customs and Patent Appeals.
Aug. 16, 1973.

Walter S. Zebrowski, Big Flats, N. Y., attorney of record, for appellants; Wil-liam J. Simmons, Jr., Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Joseph F. Nakamura, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 8 and 18–26 of appellants' application serial No. 677,185, filed October 23, 1967, for an "Optical Information Storage and Display Device." We affirm.

### The Rejection and the Issue

Claims 18–26 are rejected under 35 U.S.C. § 102 as being fully met, or anticipated, by U. S. Patent No. 3,400,214, issued to Hamann September 3, 1968, on an application filed August 26, 1964. Claim 8 is essentially rejected under 35 U.S.C. § 103 as obvious over Hamann in view of conventional knowledge as shown by Siegmund.[1]

The issue, which arises from the unique facts surrounding the prosecution of the Hamann reference, is the availability of the Hamann patent as a reference. Appellants contend that Hamann is not available as of its filing date because its disclosure did not enable a person skilled in the art to practice their invention.

### The Invention

The invention is an optical information storage and display device comprising a cathode ray tube having a photochromic fiber optic [2] faceplate on which data can be written by appropriate modulation and deflection of the electron

---

1. U. S. Patent No. 3,279,903, issued October 18, 1966.

2. Fiber optic devices are made of glass fibers. In the context of this case, "photochromic" means, according to appellants' brief, a glass which as the property of becoming less transparent when irradiated with blue or ultraviolet light, remaining unaffected by green light, and becoming more transparent when irradiated by infra-red, red, or orange light.

beam and from which data may be either read directly or projected. The faceplate is made up of numerous individual fiber elements, each having a core of photochromic glass. The photochromic core glass becomes more or less transparent depending upon the wavelength of the light which is radiated from a phosphor layer disposed on the inside surface of the faceplate.

### The Facts and the Decision of the Board

Appellants' claims 18–26 were copied from the Hamann reference for the purpose of provoking an interference. Claim 8 is an original claim with appellants, but they concede that the claim "does not differ substantially in scope" from the other claims.

Appellants have studied the prosecution history of the Hamann patent and have found that all of the claims thereof were originally rejected by the examiner under 35 U.S.C. § 112 as being based upon an insufficient disclosure in that Hamann's specification did not adequately describe the photochromic fiber optic faceplate or teach how it could be fabricated. Since the interpretation of the rejection by the Hamann examiner and Hamann's response thereto is basic to our decision, we include them here.

The Hamann examiner, in an official action dated December 1, 1967, stated the following about the § 112 rejection and grounds therefor:

The Examiner objects to the specification as insufficient. The construction and fabrication of the optical fibers which contain photochromic material is not clear. No optical fibers of this type are known to the Examiner. A statement such as "The optical fibers contain photochromic material . . ." does not comply with 35 U.S.C. § 112 which requires the specification to describe the intention ". . . in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it

pertains, . . . to make/and use the same. . . ." The "light pipes" containing photochromic material are a critical material limitation in the claims. Applicant's attention is directed to Rule 118 regarding new matter.

Claims 1–13 are rejected under 35 U.S.C. § 112 as being based upon an insufficient disclosure, as per the comments, supra.

By an amendment dated February 29, 1968, Hamann responded to the above rejection and amended page 2 of his specification to include the following sentence, which ultimately appeared in the specification of his patent:

With regard to the construction and fabrication of optical fibers which have photochromic properties, reference may be made to the article by D. S. Stookey entitled "Some Unusual Properties of Microcrystals in Glass," Scientific American, March, 1964.

In his accompanying "Remarks" Hamann included the following three paragraphs directed to the § 112 rejection and his amendment to the specification:

With regard to the objection to applicant's Specification as insufficient under 35 U.S.C. § 112 in that the construction and fabrication of the optical fibers which contain photochromic material is not clearly set forth therein, applicant has now inserted in the Specification a reference to a well-known publication dated prior to the filing date of the present application and disclosing particularly advantageous properties of silver halide microcrystals in glass, which publication clearly indicates that photochromic glass was known prior to the filing of the present application.

\* \* \* \* \* \*

Since the construction of optical fibers was well-known, the construction of faceplates from fibers was well-known, and the manufacture of glass having photochromic properties was

well-known before the filing date of the present application, the only additional information required "to enable a person skilled in the art to make and use the same" is the teaching for combination of these elements and techniques into a useful system or device. This combination is, of course, applicant's invention as clearly set forth in the present application.

Since the reference now inserted on Page 2 of applicant's Specification eliminates any question as to how photochromic glass may be manufactured for purposes of constructing the present invention, it is respectfully submitted that applicant's Specification is now clear and definite and in full compliance with 35 U.S.C. § 112.

Apparently the examiner then allowed all of the claims.

Appellants have submitted two affidavits of D. S. Stookey, named as the author of the purported Scientific American article incorporated by reference into the Hamann specification, which establish that no such article appeared in the March 1964 Scientific American [3] and further that Stookey knew of no publication dated prior to February 29, 1968, the date of the amendment to the Hamann specification, which teaches the construction and fabrication of optical fibers having photochromic properties. In addition, appellants submitted an affidavit of one Araujo to the same effect as the latter conclusion of Stookey.

Appellants' position is that the amendment to the Hamann specification was intended to overcome the insufficient disclosure rejection of the claims and since the amendment purported to incorporate an article which did not exist, the § 112 rejection is in fact still valid and illustrates the failure of the Hamann reference to enable one skilled in the art to practice the invention. Appellants' position is summarized in this quotation from their brief before the board:

> It is the position of the Applicants that since the Hamann patent specification was held to be insufficient and all of the claims therein were rejected under 35 U.S.C. § 112 as being based upon an insufficient disclosure, and since the Hamann specification was amended to refer to a non-existent publication in an effort to overcome said rejection, and since said insufficiency related to the construction of a fiber optic plate, a component which is indispensable to the use of the Hamann patent as a reference against the claims in this application, the effective filing date of the Hamann patent is not prior to the filing date of the present application, and therefore the rejection of the claims in this application based on the Hamann patent should be withdrawn.

The board, noting that "Appellants have established that no such article appeared on that date and that Stookey knew of no publication dated prior to February 29, 1968 which teaches the construction and fabrication of optical fibers having photochromic properties," rendered the following decision holding that Hamann is "available as a reference" as of its filing date:

> On the basis of the above, the addition to the specification neither added to, nor detracted from the original disclosure. However, it is quite evident from the arguments accompanying the above amendment that Hamann was arguing that, in view of the knowledge in the art, it would have been obvious how to make light pipes containing photochromic material. Quite obviously this satisfied the examiner as he passed the case to issue.

---

3. Another short news item, entitled "Through a Glass That Darkens" did appear in that issue of Scientific American, but it is not contended to have taught more than that photochromic glass was invented by D. S. Stookey and W. H. Armistead.

We find nothing in the case before us which would justify a holding of invalidity of the Hamann patent by us on the basis of inadequate disclosure at the time of filing of the application which matured into patent. The only thing of any significance in this record which would tend to prove that the manner of making said light pipes or fibers would not have been obvious as of August 26, 1964 is the statement in the affidavit of Roger J. Araujo "THAT in my opinion a method of making optical fibers which retain the photochromic properties of the starting photochromic glass would not have been obvious prior to August 26, 1964.

No information is given as to the problems involved to support the affiant's conclusion. His conclusion has no more probative value than the implied conclusion of Hamann, which was also under oath, that the method of making the pipes would have been obvious in view of the knowledge of the art prior to August 26, 1964. Therefore, we conclude that the Hamann patent is available as a reference as of August 26, 1964 for a light pipe of glass having photochromic properties. Therefore, claims 18 through 26 are fully met by Hamann. Also the examiner was correct in ruling that appellants have not complied with the requirements of Rule 204(c).

Claim 8 is met by the Hamann patent, except for the specific recitation of the relation of the indices of refraction of the components of the optical fiber. This is a conventional relationship in optical fibers as shown by the patent to Siegmund, hence it would be obvious to so make the fibers of Hamann.

### Appellants' Arguments

Appellants make several arguments to show error by the board. First, they disagree with the board's conclusion that Hamann's arguments can be taken as having satisfied the examiner of the ob-

viousness of making light pipes containing photochromic material. Appellants believe that in view of the prosecution history of Hamann, it is apparent that the examiner merely took the sentence adding reference to the Scientific American article "at face value * * * and allowed the application without checking to ascertain the existence of the publication cited therein."

■ With respect to the board's conclusion that since the Stookey article did not exist, Hamann's amendment "neither added to, nor detracted from the original disclosure," appellants say only that "the misrepresentation of a material fact which resulted in the issuance of the Hamann patent cannot be ignored in a determination of the effect of that patent as a reference." Appellants further note that they never asked the board to hold the Hamann patent *invalid,* as is implied by the board's language, since, as they correctly note, the validity of a patent "generally has nothing to do with its effectiveness as a reference."

Appellants allege, with respect to their contention that Hamann is not available as a reference under § 102(e), that there is support for them in Alexander Milburn v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926), the case codified in 35 U.S.C. § 102(e). As appellants see it,

In that case the appellant had unsuccessfully argued that the Whitford patent was invalid in view of a patent to Clifford which disclosed the apparatus of the patent in suit. The Clifford patent was filed about a month before the Whitford patent and had issued about four months prior to the Whitford patent. The Supreme Court, through Justice Holmes, reversed a district court decree and the circuit Court of Appeals affirmance in favor of the appellee and determined that Clifford's earlier disclosure to the Patent Office made it impossible for Whitford to claim the invention at a later date. Justice Holmes stated

"Clifford had done all that he could do to make his description public. He had taken steps that would make it public as soon as the Patent Office did its work, although, of course, amendments might be required of him before the end could be reached". One of the bases upon which the Milburn decision was reached is lacking in the present situation, viz. Hamann had not done all that he could do to make his description public. Hamann had filed a disclosure which was determined by the Examiner to be incomplete, and he attempted to overcome the rejection based on 35 U.S.C. § 112 by a misrepresentation of fact. It was this misrepresentation, which consisted of a statement in the Hamann patent that a nonexistent publication supplied the inadequacies of the original disclosure, which resulted in the issuance and public disclosure of the Hamann application. It is submitted that the Hamann patent is lacking a material ingredient which Justice Holmes considered necessary for the use of a patent to negate the patentability of an application filed after the actual filing date of the patent. Therefore, the Hamann patent cannot be used to negate the patentability of the appealed claims.

### The Solicitor's Position

The solicitor agrees with the board's conclusion that the Hamann examiner was obviously satisfied by Hamann's arguments to the effect that it would have been obvious how to make optical fibers containing photochromic material.

With respect to the specific question of enablement by the Hamann patent, the solicitor agrees with the board's criticism of the Araujo affidavit and asserts that the fact that the Scientific American article did not exist has little significance "since the manufacture of glass having photochromic properties was in fact well known prior to August 26, 1964, for example, as shown by the Ceramic Industry publication[4] * * * and the printed copy of a talk by S. D. Stookey" with the same title as the alleged Scientific American article. The Ceramic Industry article was cited by the examiner and identified as a reference relied upon in the board's decision. The Stookey talk was cited to the board by the examiner in his Answer, but was not mentioned in the board's opinion, and appellants, in a reply brief filed after the solicitor added a copy of the talk to the record by a Motion to Correct Diminution, challenges our right to rely upon it to supplement the disclosure of the Hamann patent. The solicitor further intimates that if the board did, as appellants assert, attach little weight to the Stookey affidavit, it was justified in so doing because "Dr. Stookey had indeed published a talk entitled 'Some Unusual Properties of Microcrystals in Glass' * * *."

### OPINION

Having studied the prosecution history of the Hamann patent, we can agree with the solicitor that the "clear implication of these remarks [made by Hamann in the amendment dated February 29, 1968] is that the method of making light pipes containing photochromic material would have been obvious in view of information available in the art prior to the filing date of Hamann's application." However, what Hamann *said* in his remarks before the examiner is so inextricably bound up with what Hamann *did* in amending his specification to refer to the Stookey article, which appellants have shown does not in fact exist, that we believe the objective enablement of the Hamann patent as a reference against appellants' application must be determined independently of the views of the Hamann examiner. But we do not think that the showing by appellants makes Hamann non-enabling as a

4. Stookey, "How Microcrystals Work in Photochromic Glass," Ceramic Industry Magazine, Apr. 1964, pp. 97–101.

matter of law, as appellants would have us hold.

Appellants' arguments, while not directly challenging the validity of the Hamann reference or the sufficiency of the disclosure therein under § 112, do seem to be based greatly upon the prosecution history of the Hamann patent. We think that the emphasis here should be directed to the objective enablement of the Hamann patent as a reference against appellants' application and away from the main thrust of appellants' arguments which appears to be based upon the alleged misrepresentation Hamann made before the Patent Office and Hamann's supposed failure to do everything he could to make the description of his invention public (the *Milburn* case argument). Having established the non-existence of the Scientific American article by Stookey is sufficient to require an independent consideration of the enablement of the Hamann patent as a reference. We now move to this consideration.

Appellants' argument is epitomized by the statement in the Araujo affidavit quoted by the board: "a method of making optical fibers which retain the photochromic properties of the starting photochromic glass would not have been obvious prior to August 26, 1964." That affidavit further contained the qualification of the affiant and the statement "THAT to my knowledge, there was no public information available prior to August 26, 1964 which would teach the construction and fabrication of optical fibers having photochromic properties * * *." The board's statement that "No information is given as to the problems involved to support the affiant's conclusion," is entirely accurate.

The Stookey affidavit similarly stated: "That I do not know of any publication dated prior to February 29, 1968 which teaches the construction and fabrication of optical fibers having photochromic properties * * *." Like the Araujo affidavit, the Stookey affidavit also gives no specific reasons for his conclusion.

On the other hand, the examiner made a reasonable assertion that there would be no distinction between the manufacture of ordinary light-conducting fibers, admittedly in the prior art, and the light-conducting fibers of photochromic glass used in the invention. The examiner cited, among other things, the Ceramic Industry Magazine article by Stookey which is entitled "How Microcrystals Work in Photochromic Glass," (April, 1964), which contains the following description of the methods of forming microcrystals in glass:

### Methods of Forming Microcrystals

The several methods of forming microcrystals all depend on the enormous increase of viscosity as glass cools to an amorphous solid. We consider the glass as a frozen solution supersaturated with respect to one or more crystalline species. If we could suddenly inject billions of crystal nuclei into the solid glass, than [sic] slowly heat the glass to a temperature where diffusion occurs, billions of crystals could grow on these nuclei. In this way the two steps of crystallization—nucleation and growth—could be controlled independently.

In effect, this is what we have learned to do, in several possible ways. In some glasses which are homogenous liquids at the melting temperature, cooling supersaturates the melt so highly that colloidal droplets of a second liquid phase (molten salt or glass), or colloidal crystals may form at temperatures so low that the glass is too rigid for growth to occur. These can become centers of crystal growth when the glass is reheated. * * *

By variations of these methods, it is possible to precipitate a surprising variety of kinds of submicroscopic particles, ranging from one micron down to a few Angstroms in diameter, and in concentrations from a few ppm to nearly 100 per cent crystallinity.

Some crystal compositions that have been precipitated in glass in this way are:

METALS—Au, Ag, Cu, Pt

HALIDES—Ag, Na, Ca

SULFIDES—Zn, Cd

TITANATES—Ba, Ca, Pb

ALUMINATES (SPINELS)—Mg, Zn

SILICATES—EUCRYPTITE, $Li_2O.Al_2O_3.2SiO_2$

SPODUMENE, $Li_2O.Al_2O_3.5SiO_2$

CORDIERITE, $2M_gO.2Al_2O_3.5SiO_2$

Absent any explanation of reasons why the photochromic glass known in the prior art cannot be used to produce light-transmitting photochromic glass fibers, we agree with the Patent Office that Hamann is an enabling disclosure. The affidavits submitted by appellants are some evidence of non-enablement but in their conclusory form without identification of the problems one skilled in the art might be faced with, they do not convince us of error in the position of the Patent Office. See In re Weber, 341 F.2d 143, 52 CCPA 1015 (1965).

Appellants, instead of giving any such reasons for the inability of one skilled in the art to make the photochromic light-transmitting fibers, collaterally attack the Hamann reference and emphasize the alleged misrepresentation by Hamann of a material fact resulting in the issuance of the Hamann patent. This raises issues which are not properly considered in an ex parte proceeding where Hamann is not a party. Cf. Norton v. Curtiss, 433 F.2d 779, 57 CCPA 1384 (1970); Langer v. Kaufman, 465 F.2d 915, 59 CCPA 1261 (1972).

The rejection of claims 18–26 under § 102 upon the Hamann reference is accordingly affirmed.

Claim 8, conceded by appellants not to differ substantially in scope from the other claims, has been properly rejected under § 103, and the decision of the board on claim 8 is affirmed.

The decision of the board is affirmed.

Affirmed.