**Application of Roy R. WISEMAN, Jr., and James J. Kovac.**

**Appeal No. 79–508.**

United States Court of Customs and Patent Appeals.

April 26, 1979.

Edwin W. Oldham, Ray L. Weber, Oldham, Oldham, Hudak & Weber Co., L.P.A., attorneys of record, Akron, Ohio, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Harry I. Moatz, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and KUNZIG,* Judge.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejection under 35 U.S.C. § 103 of claims 1–3, 6, 9, and 10 in appellants' application serial No. 639,391, filed December 10, 1975, a continuation of application serial No. 223,949, filed February 7, 1972, for "Grooved Carbon Brake Discs," as obvious from the combined teachings of Ruppe[1] and Benini.[2] We affirm.

### The Invention

Appellants' invention pertains to a disc brake assembly, primarily for aircraft applications, wherein there is a stack of alternating rotating and stationary brake discs, each disc being provided with a plurality of grooves on its faces for the purpose of venting steam generated during braking by the action of frictional heat on moisture present on the disc. Claim 1, the only independent claim on appeal, is illustrative:

1. A disc brake having a stack of alternate rotating and stationary discs having torque transfer notches therein extending across the full width of the disc carried between a backing plate and a pressure plate, said discs operating in the earth's atmosphere, comprising:

each annular disc being of substantially uniform thickness across their full width and formed of a carbon based material capable of absorbing water and having a plurality of grooves extending across at least one of the rubbing faces of the disc, each groove extending the full distance between the inner and outer peripheries of the disc to transfer water-based steam and vaporized gasses emanating from the disc material from between adjacent discs caused by heating during a braking action, the grooves being located at spaced intervals around the disc, each groove in at least alternating discs extending at a large angle from the radius thereof.

### The Prior Art

Ruppe teaches a disc brake assembly having stacked discs formed of carbon or carbon composite. The structure of the Ruppe brake is substantially similar to that of the claimed invention, except that Ruppe does

---

* Honorable Robert L. Kunzig, Judge, United States Court of Claims, sitting by designation.

1. U. S. Patent No. 3,692,150, issued September 19, 1972, filed October 26, 1970.

2. U. S. Patent No. 3,161,260, issued December 15, 1964.

not disclose grooves in the disc faces. Ruppe says his brakes are particularly useful in aircraft applications where low weight and high performance is necessary.

Benini teaches an automotive brake assembly wherein the frictional faces of the braking members are provided with a series of grooves for the purposes of cooling the frictional faces of the braking members and venting dust produced by consumption of the brake linings. Benini teaches alternate embodiments of drum-and-shoe brakes and disc-and-pad brakes.

### The Rejections

The board reversed the examiner's rejection on prior art not including Ruppe and Benini under 35 U.S.C. § 103 and, under 37 CFR 1.196(b), entered its own ground of rejection under § 103. Specifically, the board held the appealed claims to be obvious under § 103 from Ruppe in view of Benini. According to the board:

> Benini discloses (Figure 5) a solution to the problem of brake fading by providing grooves in the cooperating friction discs. Ruppe discloses a brake having cooperating friction discs of carbon. For the purpose of Benini, it would have been obvious to provide the brake disc of Ruppe with grooves. Although Benini is silent as to the venting of moisture [sic, vapor?] caused by heat during braking action, it is our opinion that such a characteristic is inherent in the structure thereof. Since the claimed subject matter would have been obvious from the references for Benini's purpose, it is immaterial that the references do not state the advantages of venting steam or vapor formed by heat during a braking action. [Citations omitted.]

The board adhered to its decision on reconsideration over appellants' argument that there is no reason to provide grooves in the Ruppe brake because there is no need to *cool* a brake formed from carbon. Appellants had additionally argued before the board that their invention was patentable under a line of cases standing for the proposition that a patentable invention may result from the discovery of the cause of a problem in the art, notwithstanding that the solution is obvious in light of knowledge of the cause of the problem. The board, however, reiterated its previous ground of rejection, quoted *supra*.

### Appellants' Arguments

Appellants argue that the board erred in finding that their invention would have been obvious. Specifically, they challenge the finding that it would have been obvious to incorporate the grooves of Benini into the Ruppe brake on two grounds. First, they note that carbon brakes do not require cooling, which they allege is the principal reason for providing the grooves in a disc brake. Second, through counsel, they stated at oral argument, apparently for the first time in the appeal process, that carbon brakes do not produce dust. Since these two reasons, it is argued, would be the only motivation for one skilled in the art to provide a disc brake structure with grooves, the thrust of their argument is that there is no reason to combine the teachings of the two references, and, hence, no prima facie case of obviousness has been made out.

In addition, appellants continue to press their argument concerning the discovery of the unrecognized cause of a problem in the art. They continue to allege that they are the ones who discovered that the cause of carbon-disc brake fading is the buildup of pressure caused by steam generated when the heat caused by the friction of the braking process vaporizes any moisture present in the porous carbon brake discs, causing fading of the brakes.

Finally, for the first time, they allege that their groove design is patentably distinct from that used by Benini, and that the Benini groove design would unnecessarily cool their braking surfaces causing undesirable operation and undue lining wear.

### OPINION

■ At the outset, we note that appellants have chosen to argue the patentability of the claims without regard to any particu-

lar claim. Thus, all claims on appeal will stand or fall with appealed claim 1. *See In re Burckel*, 592 F.2d 1175, 201 USPQ 67 (Cust. & Pat.App.1979); *In re Hellsund*, 474 F.2d 1307, 59 CCPA 1382, 177 USPQ 170 (1973).

The board has made out a sufficient prima facie case of obviousness of the subject matter as a whole from Ruppe in view of Benini. One of ordinary skill in the brake art, looking to Benini in search of a solution to the problem of brake fading, would find ample suggestion therein to modify the Ruppe structure by providing grooves in the frictional surfaces of the carbon disc braking members to arrive at the claimed structure.

We do not agree with appellants that it would be illogical to incorporate the grooves of Benini into the Ruppe brake. In arguing that the Ruppe brake is made from carbon and thus needs no cooling, making the employment of grooves unnecessary, appellants ignore the teaching of Benini that superheating of brakes is not the sole cause of fading. After Benini characterizes the *prior art* as attributing brake fading to overheating of the braking surfaces, he states that

> * * * if the number of transversal grooves [which are used to overcome the fading problem] is not sufficiently large, the *dust particles* which are formed during the braking in consequence of the consumption of the linings between the contacting braking surfaces, roll between said braking surfaces thus *acting as a lubricant* and generating a fading effect, *even in absence of superheating of the brake linings.* [Emphasis ours.]

The removal of these dust particles provides sufficient suggestion to one of ordinary skill in the brake art to follow the teaching of Benini and provide the Ruppe brake with grooves in order to avoid his fading problem, assuming, as we must, familiarity with Benini, a patent in the same art.

Appellants have argued that there would be no reason to combine the Benini dust-removing grooves into the Ruppe brake because carbon brakes have no dust problem.

This is a significant argument because we agree with appellants that no *cooling* problem exists for carbon brakes. If no dust is produced by the action of carbon brakes, there would be no motivation for one skilled in the art to incorporate Benini's grooves into the Ruppe brake. We would then confront a situation involving no prima facie case of obviousness and the rejection could not stand.

■ This argument, however, must fail. We find no evidence of record to support this assertion. We have examined *all* of the prior art of record and cannot find any support for what we therefore view as mere unsupported argument. Such arguments cannot take the place of evidence. *In re Budnick*, 537 F.2d 535, 190 USPQ 422 (Cust. & Pat.App.1976); *In re Schulze*, 52 CCPA 1422, 346 F.2d 600, 145 USPQ 716 (1965).

■ Appellants also argue that their groove design is patentably distinct from that of Benini and that the cooling achieved by Benini's grooves is unnecessary and undesirable for their purposes. As with appellants' previous argument, this must also fail because it is unsupported by any evidence. In addition, this argument was not presented below and we would not hear it even if it were supported by evidence. *In re Mraz*, 455 F.2d 1069, 59 CCPA 866, 173 USPQ 25 (1972); *In re Fong*, 378 F.2d 977, 54 CCPA 1482, 154 USPQ 25 (1967).

■ Appellants place their principal reliance on what they term "the *Phair* doctrine," *Ex parte Phair*, 1 USPQ 133, 134 (Bd.App.1929), wherein it was held, citing several prior decisions, that "invention may exist in the discovery of the cause of a defect in an existing machine or process and applying a remedy therefor even though, after the cause is understood, the remedy would be obvious." (Today we would say that patentability, rather than "invention," may be found under those circumstances.) This court espoused this doctrine in, and appellants also rely on, *In re Sponnoble*, 405 F.2d 578, 56 CCPA 823, 160 USPQ 237 (1969), which has been followed in later cases. In *Sponnoble, on the basis of*

*extensive evidence* recited in the opinion, we found "a clear indication that he [Sponnoble] discovered the source of the problem." 405 F.2d at 585, 56 CCPA at 833, 100 USPQ at 243. In contrast, in the present case we find only the reiterated statement of counsel that appellants discovered the source of the problem. There is, however, nothing of record to substantiate the assertion. The most we can find are the following two sentences in appellants' specification:

> When water is present in a brake disc assembly a substantial decrease in braking torque occurs. This decrease is the result of a loss of friction coefficient due to the build up of steam between the opposing brake discs.

Appellants do not contend that the fact stated in the first sentence was their discovery. It is such a widely known phenomenon we could take judicial notice of it. The second sentence is a mere statement of fact without any indication of who discovered that fact. The specification does not say appellants discovered it. Counsel have seized upon it as the basis for their argument, but that is not enough; there must be some evidence of record by way of affidavits or declarations, or at least a clear and persuasive assertion in the specification, that the fact relied on to support patentability was the discovery of the applicants for patent. For all that appears from the record in this case, appellants were reciting a fact already known to those working in the art. For this reason, the "*Phair* doctrine" and the *Sponnoble* case do not aid appellants.

■■■ Appellants face further problems which prevent the application of the "*Phair* doctrine." The discovery of the cause of a problem—assuming, arguendo, that appellants discovered a cause—does not always result in a patentable invention. Although there may be patentable invention where the solution is obvious after the discovery of the cause of the problem, *Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 67–68, 43 S.Ct. 322, 66 L.Ed. 405 (1923), a different situation exists where the solution is obvious from prior art *which con-*

*tains the same solution for a similar problem*, here grooving the braking surfaces. The board found that the Ruppe brake, when provided with Benini's grooves, would inherently overcome the steam or vapor cause of the problem, relied on for patentability by appellants, as well as the cause recognized by Benini, namely, dust and overheating. Appellants have not denied that this is true. They are, in effect, arguing that a structure suggested by the prior art, and, hence, potentially in the possession of the public, is patentable to them because it also possesses an *inherent*, but hitherto unknown, function which they claim to have discovered. This is not the law. A patent on such a structure would remove from the public that which is in the public domain by virtue of its inclusion in, or obviousness from, the prior art. *See In re Finsterwalder*, 436 F.2d 1028, 58 CCPA 871, 168 USPQ 530 (1971).

The decision of the board is *affirmed.*

*AFFIRMED.*