**DATASCOPE CORP., Plaintiff,**

v.

**KONTRON,
INCORPORATED, Defendant.**

**Civ. A. No. 83–3704–G.**

United States District Court,
D. Massachusetts.

June 24, 1985.

Thomas V. Urmy, Jr., Warner & Stackpole, Boston, Mass., for plaintiff.

Michael T. Cetrone, Daniel Gleason, Nutter, McClennen & Fish, Boston, Mass.; Theresa M. Gillis, Michele Gapinski, Dewey, Ballantine, Bushby, Palmer & Wood, New York City; Peter B. Ellis, Foley, Hoag & Eliot, Boston, Mass., and John C. Vassil, Patricia S. Rocha, Morgan, Finnegan, Pine, Foley & Lee, New York City, for defendant.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

GARRITY, District Judge.

On November 15, 1984, plaintiff filed this action alleging infringement of U.S. Letters Patent No. 4,261,339 ("the '339 patent") by defendant and a motion for preliminary injunction seeking to enjoin defendant *pendente lite* from manufacturing and selling its allegedly infringing devices. After hearing oral argument and reviewing the extensive briefs, affidavits and exhibits submitted by the parties, the court grants plaintiff's motion for preliminary injunction in part and denies it in part. Pursuant to F.R.Civ.P. 52(a), the following represents the court's findings of fact and conclusions of law.

### I. *Statement of Facts*

On April 14, 1981, the '339 patent was issued to plaintiff as assignee for the invention of an intra-aortic inflatable balloon catheter ("IAB") capable of percutaneous insertion, i.e., by puncturing the femoral artery with a needle through the skin instead of by surgery. Shortly thereafter, plaintiff brought an action in the United States District Court for the District of New Jersey, Chief Judge Fisher presiding, charging SMEC, Inc. ("SMEC") with patent infringement. *Datascope v. SMEC, Inc.,* (1984) 594 F.Supp. 1306. After two years of discovery and a thirteen-day trial, the court found the '339 patent valid and infringed by SMEC's IAB, filing a compre-

hensive opinion dated September 24, 1984.[1] Because Chief Judge Fisher's opinion so thoroughly discussed the background and development of IABs, the '339 patent, and the SMEC IAB, for purposes of the instant motion we adopt his findings of fact with respect to those issues.[2]

Briefly summarizing the findings of Judge Fisher, the primary significance of the IAB claimed in the '339 patent lies in its ability to be inserted percutaneously, rather than surgically. Percutaneous insertion was made possible by essentially three components of the invention: the end of the catheter tube that extended into the inside of the balloon chamber of the IAB was replaced by a wire support member; the support member could be rotated at one end of the balloon chamber but not at the other end of the chamber so that the balloon could be wrapped around the support member; and a device was added to the distal end of the catheter tube to prevent the support member from telescoping into the catheter tube and to insure that the IAB could be pushed through the arterial system. By wrapping the balloon around the support member, the cross-sectional diameter of the balloon chamber is reduced significantly, permitting the catheter, with the balloon wrapped about the support member, to be inserted into the arterial system percutaneously, eliminating the trauma and risks of surgery and increasing the speed of insertion, among other benefits.

Defendant manufactures and sells two types of percutaneous IABs. One of defendant's devices is called a single lumen IAB, which, as conceded by defendant, is virtually identical to the SMEC device found by Judge Fisher to infringe the '339 patent. This IAB differs from that described by the '339 patent in that the support member extends beyond the balloon chamber through the full length of the catheter tube and into a wrap handle, which is used to wrap the balloon about the support member. Defendant's other device is known as a dual lumen IAB.[3] In this IAB, the support member is replaced by a narrow hollow tube which is open at the distal end of the balloon chamber. In patients with tortuous arterial systems or atherosclerosis, a guidewire can be passed through the arterial system into the aorta. A dual lumen IAB is then threaded over the guidewire into the aorta with greater ease. Defendant's dual lumen IAB also includes the wrap handle described above.[4]

Plaintiff alleges that both of defendant's IABs infringe the '339 patent. Therefore, it seeks to enjoin defendant from manufacturing and selling these devices.

## II. The Standard for a Preliminary Injunction

The court must consider four factors in determining whether or not to grant a preliminary injunction in a patent infringement case:

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue;

(2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

(3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and

---

1. SMEC has appealed that decision to the United States Court of Appeals for the Federal Circuit. On December 17, 1984, Chief Judge Fisher granted plaintiff's motion for a preliminary injunction and enjoined SMEC from manufacturing and selling IABs which infringe the '339 patent.

2. Pp. 2–11 of the September 24, 1984 opinion.

3. This device is also referred to as a central lumen or a double lumen IAB.

4. SMEC has been granted a patent for its percutaneous IAB with a wrap handle, U.S. Letters Patent No. 4,422,447. Defendant has been granted a patent for its dual lumen percutaneous IAB with a wrap handle, U.S. Letters Patent No. 4,362,150, which it claims in its second counterclaim is being infringed by plaintiff. The Patent Office has instituted interference proceedings with respect to the SMEC and Kontron, Inc. patents, Declaration of Interference No. 101,195.

(4) whether the granting of a preliminary injunction will disserve the public interest.

*Roper Corporation v. Litton Systems, Inc.*, Fed.Cir.1985, 757 F.2d 1266, 1268. However, irreparable harm will be presumed in a patent case where validity and infringement have been clearly established. *Id.* at 1271; *Smith International v. Hughes Tool Company*, Fed.Cir.1983, 718 F.2d 1573, 1581. The purpose of this exception is to protect the right to exclude which has been granted to the patent owner. *Roper Corporation, supra*, at 1275, n. 5. A prior adjudication of validity and infringement may constitute a sufficient "clear showing" to give rise to a presumption of irreparable injury. *Id.* at 1578; *Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.*, 2 Cir.1971, 443 F.2d 867, 873 ("The theory of the prior adjudication exception is ... that a determination of validity after a full trial adds enough to what is now the statutory presumption, 35 U.S.C. § 282, to justify dispensation from the rule that a preliminary injunction will not be granted 'except when the patent is beyond question valid.'"). However, in order for the presumption of irreparable harm to attach, the defendant's objections to validity and infringement must have been raised and rejected in the prior adjudication. *Id.*

There has been a prior judicial determination that the '339 patent is valid and infringed by the SMEC IAB. However, defendant has raised various issues with respect to validity and infringement which it claims were not addressed in the New Jersey case. Therefore, plaintiff will be entitled to a presumption of immediate, irreparable harm only if we find that these issues were considered by Chief Judge Fisher or would not have affected his findings of validity and infringement.

### III. *Validity*

Defendant first asserts that the IAB claimed in the '339 patent is obvious and, therefore, invalid under 35 U.S.C. § 103, based upon the teachings of plaintiff's prior art IAB and U.S. Letters Patent No. 3,939,820 ("the Grayzel patent").

Judge Fisher addressed the issue of obviousness with respect to the Grayzel patent in his September 24, 1984 decision. That patent teaches that the size of IABs can be reduced by replacing the catheter tube within the balloon with a wire and then wrapping the balloon around the wire. He found that the Grayzel patent does not render the '339 patent obvious because it does not claim a rotatable support member which allows one end of the balloon to twist relative to the other.

According to defendant, the New Jersey court did not consider plaintiff's prior art surgical IAB together with the Grayzel patent.[5] In plaintiff's prior art IAB, the catheter tube extended through the entire balloon chamber. Inside the catheter tube was a wire stylet, which was fixed at the distal end of the balloon and extended through the balloon chamber, terminating about an inch and a half beyond the proximal end of the balloon chamber. The proximal end of the stylet was unfixed in the catheter tube. The primary purpose of the stylet was to enable the catheter to be permanently bent near the balloon tip to allow the IAB to be guided around obstructions or curves in the arteries. Another purpose of the stylet was to provide the IAB with additional support.

We find that plaintiff's prior art surgical IAB, even when considered together with the Grayzel patent, does not render obvious the claims of the '339 patent. As stated by Chief Judge Fisher, the significant feature of the '339 patent is the rotatable nature of the support member. The stylet from plaintiff's prior art was not used for such a purpose. Nor was the stylet inherently rotatable, even though it was fixed at one end and unfixed at the

---

5. During the *SMEC* case, plaintiff's prior art surgical IAB was received in evidence as Exhibit P–6 and a drawing of a similar device was received in evidence as Exhibit CC. However, defendant argues that Judge Fisher did not consider its relevance to the question of obviousness.

other end of the balloon chamber, as it was always surrounded by the catheter tube. Therefore, this situation is distinguishable from that in *Application of Wiseman*, C.C.P.A.1979, 596 F.2d 1019, where a device was held to be unpatentable which possessed an inherent function which was previously unknown. Even if plaintiff had removed the catheter tube from the balloon chamber of its prior art as described in the Grayzel patent, the IAB would have needed significant alterations before it would have resembled the IAB claimed in the '339 patent. Therefore, we find for the purposes of plaintiff's motion for preliminary injunction that the claims of the '339 patent were not obvious.[6]

Defendant also claims that the '339 patent is unenforceable due to inequitable conduct because plaintiff withheld material information, namely its prior art surgical IAB, from the Patent and Trademark Office. Defendant must prove this fraud by clear and convincing evidence. *Kimberly-Clark Corporation v. Johnson & Johnson*, Fed.Cir.1984, 745 F.2d 1437, 1454. In light of our findings *ante* with respect to the stylet used in plaintiff's prior art, and its minor relevance to the development of the '339 patent, we conclude that defendant is not likely to show by clear and convincing evidence that plaintiff was guilty of any inequitable conduct in the prosecution of its patent.

Finally, defendant argues that the '339 patent is invalid under 35 U.S.C. § 112, which requires the following:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The purpose of § 112 is to provide the public with a *quid pro quo;* the inventor receives a limited monopoly over the invention and the public receives full disclosure of the invention in return. 2 Chisum, Patents § 7.01 (1985). According to defendant, the specifications of the '339 patent fail to teach adequately how to use the invention and fail to describe the best mode.

The '339 patent teaches that the balloon should be "tightly twisted" around the support member into a small cross-sectional diameter. However, overwrapping of the balloon could prevent the device from unwrapping properly in the aorta. Plaintiff has conducted extensive experiments with its commercial devices to determine the specific number of turns required in order to avoid overwrapping problems and has included in its instructions to users of its commercial devices specific instructions on the number of turns required, ranging from six to thirteen. The specification of the '339 patent also states that the support member "is preferably made of a material which may be formed during use into a desired axial configuration by bending." However, plaintiff knew prior to the filing of the '339 patent application that bending of the support member more than approximately 15 to 20 degrees would impede the unwrapping of the balloon. Moreover, the instructions on plaintiff's commercial IABs state that the support member must not be bent.

We find that plaintiff did not fail to teach how to use the patented device. The enablement requirement of § 112 is met "by disclosures that are reasonably clear to one skilled in the art, even though some experimentation may be necessary." *Phillip v. Mayer, Rothkopf Industries, Inc.*, 2 Cir. 1980, 635 F.2d 1056, 1063 [citations omitted]. The specifications in the '339 patent which state that the balloon should be tightly twisted about the support wire ade-

---

**6.** We are also mindful of the wide commercial success of the percutaneous IAB and, in particular, plaintiff's commercial embodiment of the '339 patent. That an invention has enjoyed commercial success and filled a demonstrated need is relevant to the question of obviousness. *International Telephone and Telegraph Corp. v. Raychem Corp.*, 1 Cir.1976, 538 F.2d 453, 459.

quately describe the invention, which requires that the balloon be wrapped tightly so that the balloon chamber is reduced to a diameter equal to or smaller than that of the catheter tube. The exact number of turns required and the amount of twisting that will result in overwrapping may vary with each commercial embodiment of the '339 patent and, therefore, may necessitate some experimentation by the makers and users of these devices. However, plaintiff's failure to be more specific does not warrant a finding that the patent is not enabling.

Furthermore, plaintiff's references to bending in the '339 patent specification do not warrant a finding that the patent is invalid. The support member could be bent approximately 15 to 20 degrees without interfering with unwrapping. That plaintiff thereafter chose to instruct the users of its commercial IABs not to bend the support member does not prove that the specification should not have made a reference to bending.[7]

█ We also find that plaintiff did not fail to set forth the best mode for carrying out the invention. In order for a patent to be invalidated for failure to disclose the best mode, the evidence "must tend to show that the quality of an applicant's best mode disclosure is so poor as to effectively result in concealment." *Matter of Application of Sherwood*, C.C.P.A.1980, 613 F.2d 809, 819. "Enumeration of possible problems, while desirable, is not absolutely essential unless such a nondisclosure strikes at the truthfulness of the presumption that the 'mode' described is indeed the 'best' contemplated." *Weil v. Fritz*, C.C.P.A.1979, 601 F.2d 551, 556. We find no such effective concealment here, either accidental or intentional, in plaintiff's failure to enumerate the problems discussed above which plaintiff began to detect shortly before it filed its application for the '339 patent. Therefore, we find that the '339 patent is not invalid under § 112.

### IV. *Infringement*

█ Plaintiff claims that both types of percutaneous IABs manufactured by defendant infringe the '339 patent. As stated above, defendant's single lumen IAB with the wrap handle is virtually identical to the SMEC device. Chief Judge Fisher found that the SMEC device did not literally infringe the '339 patent. However, he found infringement under the doctrine of equivalents, which allows the patentee to charge with infringement the producer of a device that performs substantially the same function in substantially the same way to obtain the same result as that called for by the patent. *Graver Tank & Mfg Co., Inc. v. Linde Air Products Co.*, 1950, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097. We concur in his findings and therefore find that defendant's single lumen device is infringing the '339 patent. Because validity and infringement of the '339 patent by defendant's single lumen IAB have been clearly established by a prior adjudication, we will presume irreparable harm to plaintiff, *Smith International, supra,* and grant plaintiff's motion for a preliminary injunction with respect to this device.

█ There has been no such prior adjudication of the question of infringement by defendant's dual lumen IAB. Nonetheless, we find that plaintiff has shown a reasonable likelihood of prevailing on the merits on this issue. The essential element of the '339 patent, a rotatable support member about which the balloon chamber of the IAB can be wrapped, is found in defendant's dual lumen IAB. Defendant has improved substantially upon the invention by replacing the support member with a hollow tube, thereby enabling the IAB to be threaded over a guidewire into the arterial system. However, an improvement over a patented device does not avoid infringement. *Lockheed Aircraft Corp. v. United States*, Ct.Cl.1977, 553 F.2d 69, 83.

On the other hand, plaintiff has not made such a clear showing of infringement that

---

7. Moreover, according to one of the inventors of the patented device, Sidney Wolvek, a maker or

user of the patented device could determine the maximum degree of bend by simple arithmetic.

it is entitled to a presumption of irreparable harm. Therefore, the court must balance the harm to each of the parties that a preliminary injunction could cause.

### V. *Balance of Hardship*

 Defendant has made a strong showing that it will be irreparably harmed by a preliminary injunction. For example, it will suffer losses in sales, it will be forced to lay off employees, its good will will be injured, and it will have to write off inventory and capital improvements. Defendant has also made some showing that the public will be harmed by an injunction in that some physicians prefer defendant's dual lumen IABs.

Plaintiff has not demonstrated that it will be harmed comparably by the denial of an injunction. There is no indication that defendant would not be able to compensate plaintiff if plaintiff ultimately prevails on the merits.[8] Therefore, plaintiff's motion for a preliminary injunction is denied with respect to defendant's dual lumen IAB.

### VI. *Summary and Order*

Plaintiff's motion for a preliminary injunction is granted in part and denied in part. The motion is granted with respect to defendant's single lumen IAB, but denied with respect to defendant's dual lumen IAB. The parties are ordered to file affidavits on or before July 1, 1985 on the question of the appropriate security to be given by plaintiff.

---

**8.** We note also that plaintiff did not bring the instant action until three and a half years after it first learned of defendant's percutaneous IABs.