**In re Edward L. BENNO.**

**Appeal No. 85–882.**

United States Court of Appeals,
Federal Circuit.

July 26, 1985.

Edward L. Benno, Grayslake, Ill., pro se.

Richard E. Schafer, Associate Sol., U.S. Patent and Trademark Office, Arlington, Virginia, argued for appellee. With him on brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol., Washington, D.C.

Before RICH, BALDWIN and BENNETT, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the decision of the United States Patent and Trademark Office (PTO) Board of Appeals (board) affirming the examiner's rejection of all claims remaining in appellant's patent application, serial No. 291,845, filed August 10, 1981, entitled MULTIPACKAGES, THE PACKAGING ELEMENTS, AND THE METHOD FOR MAKING THE MULTIPACKAGES. We reverse. Appellant, long registered to practice before the PTO, appears pro se. He also prosecuted his own application.

*The Invention*

A "multipackage," as appellant uses the term, is typified by what is currently known in the vernacular as a "six-pack." However, the specification is inclusive of an eight-pack. Figs. 1–3 below illustrate the former. Fig. 3 is a section on the line 3–3 of Fig. 2. Cans may be substituted for the bottles.

Fig. 1    Fig. 2    Fig. 3

Appellant's basic objective has been economical packaging by the use of elastic, blown plastic film material instead of paperboard or the like. A problem encountered with the plastic (polymer) film material is stated in the specification to be that "there is a great tendency of the group [of containers] to be rolled or slid from the desireable [sic] rectangular pattern into a diamond pattern or a generally circular pattern by the forces of the [horizontal] tensioned film band."

Another object is to produce a package which includes some sort of a handle by which it can be carried in one hand. The specification summarizes the objectives of the invention in the statement that it uses "no packaging elements other than two circumferentially continuous highly stretched plastics material film bands, and in which one of the package forming bands further functions as a comfortable package carrying handle." An example of the plastic used is blown, low density polyethylene film from 1 to 4 mils thick.

Referring to the above drawings, six bottles 10 are shown arranged in the usual rectangular grouping. The bottles are first encircled by a stretched, endless, plastic band 11 extending in a horizontal di-

rection. The band is initially shorter than the distance around the bottles but is not stretched beyond its elastic limit in applying it. It contracts through its inherent elasticity to bind the bottles together upon being released. In this condition, as above indicated, the bottles, upon being disturbed only slightly, have a tendency, under the pressure of the elastic band, to move out of their rectangular arrangement, as shown, into some other pattern, rolling or sliding upon one another. In other words, the package is quite unstable. However, the invention includes a second band 12 which is applied vertically around the center pair of bottles and over the outer surface of the first band. This immediately renders the entire six-pack very stable and capable of rough handling without disturbance of the rectangular configuration. Due to its elasticity, the band 12 contracts tightly and is pulled down over the tops of the center pair of containers and pulls inwardly on the segments of the first band 11 between the bottles as shown in Fig. 2. In the case of an eight-pack, the vertically arranged second band encompasses the *two* central ranks of containers instead of just one rank and the broader claims are inclusive of such structure. The package can be picked up by inserting a couple of fingers under that part of band 12 between the tops of the center containers. Thus, using the second band as a handle does not pull it away from the bottles sufficiently to interfere with the integrity of the package. Preferably, the second band is made of thicker, and hence stronger, material than the first band, for example, 4 mils instead of 2 mils.

The claims on appeal are 1, 3–6, and 8–13. No claim has been allowed. Illustrative is claim 1 which reads:

1. A package of *six or eight* containers in which the containers have substantially cylindrical body portions between the upper and lower ends thereof, said containers arranged upright in a group with said body portions in side-by-side abutting relationships and in two parallel rows of substantially perpendicular ranks, *a first tube* of an elastic plastics material, said first tube having an initial axial length greater than one half of the axial length of said body portions and an initial circumferential dimension substantially less than the circumferential dimension of said group measured in a *horizontal* direction about said body portions, said first tube being *stretched and applied in a tensioned condition circumferentially* of said group about said body portions, *a second tube* of an elastic plastics material, said second tube having an initial axial length substantially no greater than the distance between the opposed body portions of the end ranks of said containers in said group and an initial circumferential dimension substantially less than the circumferential dimension *about a rank* of said containers in said group taken in a flat plane *perpendicular* to the longitudinal direction of said rows and through the *vertical* central axes of said containers in said rank, and said second tube being *stretched and applied in a tensioned condition* circumferentially about the ranks of containers between the end ranks of containers of said group and *over the outer surface of said first tube,* and the tensioned condition of said second tube being sufficient to maintain at least the upper and lower edge portions of said first tube which are intersected by the edges of second tube indented. [Emphasis added.]

There is no need to discuss the other claims. The PTO dealt with them all on the same ground. Some are dependent and merely add limitations. Others are independent and are merely different ways of describing the same combination with cylindrical containers of two elastic bands employed as defined in claim 1, claim 13 alone being directed to a method of making such a multipackage. Some claims are specific to six-packs.

### The References

There are only two references. The first is U.S. patent 4,300,681, entitled BOTTLE PACKAGE AND PACKAGING DEVICE and issued to Illinois Tool Works, Inc., Nov.

17, 1981, as assignee of M.J. Klygis and his coinventor Edward L. Benno, the applicant here. It particularly discloses packaging large two-liter capacity plastic beverage bottles by means of film such as appellant uses in the present invention, but it discloses only a single band applied in a horizontal direction, in conjunction with rigid plastic clips which serve as handles and engage the necks of the bottles to produce either a two-pack or a four-pack as shown in the drawings below.

KLYGIS and BENNO

In Fig. 1 is shown a pair of "typical two-liter bottles made of deformable plastic containing liquid contents 26" which have shoulder portions 18 and necks 20 provided with flanges 24. A single elastic plastic film band 14 holds the two bottles together. (The rectangular area 32 on the band merely represents a label which may be printed on the band.) Fig. 2 is a top view of the two-bottle package (without any handle). Fig. 7 is a variation in which four bottles are similarly joined but additionally shows a rigid plastic "single handle device 136 similar to handle 36 [which] may be used in such package if desired." Referring to Figs. 5 and 6, they show the handle device 36 and the manner of its attachment to the necks 20 of the bottles abutting the flanges 24. The central strut portion 38 is the part to be grasped as a handle.

There is in the specification of this patent a passage made much of by the PTO which reads:

> The four-pack shown in Fig. 7 is merely illustrative of the fact the invention can be adapted for use in any variety of arrays, such as 2, 3, 4, 6, or any other reasonable multiple.

But no arrays other than two and four are shown in drawings or otherwise described.

The second reference is U.S. patent 4,304,332 issued December 8, 1981, to Bernard R. Danti. Figs. 1, 3, and 4 appear below.

Fig. 1

Fig. 3

Fig. 4

DANTI

Danti's specification begins with reference to the problem of packaging a case of beer consisting of 24 cans. His specific embodiment deals with packaging 24 cans, 12 on top of 12 in three rows of 4 cans each, as shown. While Fig. 1 alone fails to show that there are 24 cans in the package, the specification is unambiguous, saying of Fig. 1:

> ... there is seen a package 10 formed of two congruently and vertically-stacked groups of cans 12. The total number of cans is 24....

The PTO appears to find it of significance that the plastic wrappings employed are described as "two tensioned polymer film wraps, each wrap arranged at right angles to the other." It is necessary to examine the disclosure closely to see what this means. Referring to Fig. 1, the specification says that on the stacked cans there "is wrapped, under tension a transparent, [sic] sheet 14 of 2-mil thick ethylenevinyl acetate film. The film is heat-sealed, typically, along lines 14s, one of which will be on each side of the package." From this description it is clear that the film is wrapped around the stacked cans in a vertical direction. From the statement the film is "wrapped, under tension," one would infer that Danti does not use tubing. His disclosure is silent about when and how the wrapped film is heat sealed. We have quoted above the most explicit statement in the specification about how the package is formed. The second film is described thus: "Wrapped over sheet 14 is a similar sheet 16 sheet 16 is also heatsealed along two welds 16s. Sheet 16 is similar to sheet 14 except that it is somewhat narrower. It is also wrapped under tension. A tray 18 is placed beneath the cans during the packaging operation."

From the description it is clear that both of the films are wrapped around the 24 cans and the tray 18 in the vertical direction. They are indeed at a ninety degree angle to each other, as are appellant's films, but not in the same way. While both films in Danti go around the pack in a vertical direction, in appellant's pack one is horizontal and the other is vertical.

Referring to Fig. 4, cutout portions 28 on the outer film facilitate picking up the package by the outer film and Fig. 3 illustrates what happens when this is done. In this figure, the black dots or stippling marked 24 are supposed to represent ice, which can be stuffed under the wrapping through corner openings 25 between the two wrappings.

### The Rejection

The final view of the examiner is, of course, to be found in his Answer on the appeal to the board. We quote the summa-

ry thereof as the most succinct way of expressing his grounds of rejection:

(1). The patent to Danti discloses a plurality of articles comprising two tensioned film wraps arranged at right angles to one another creating a package of high integrity that may support 24 containers.

(2). The patent of Klygis et al discloses a horizontally disposed tube or wrap tensioned in such a state that the compressive forces on the containers maintain the configuration of the array producing a package of high integrity.

(3). To combine the teachings of Danti and Klygis et al, as described extensively in the Examiner Answer, is well within the scope of the respective inventions.

The board, in a very short opinion, found the examiner's reasons to be correct. However, it made an additional statement, on which we wish to comment, as follows:

While Danti discloses, in figure 1, a package in which both webs encircle the containers in a vertical direction, *claim 1 of Danti is broad enough to read on* a package with the inner web encircling the containers in a horizontal direction and the outer web encircling the containers in a vertical direction. Such a configuration of tensioned webs would have been obvious from Danti alone. [Emphasis ours.]

This was, in effect, a new rejection not so labelled. *Cf.* 37 CFR 1.196(b). The examiner, in finding obviousness, relied only on the combined teachings of the two references.

## OPINION

On this record, the sole question is whether appellant's claims on appeal define subject matter which would have been obvious to one of ordinary skill in the art of packaging cylindrical containers such as bottles and cans from the references cited. In view of the position taken by the board, we have to consider obviousness (a) from Danti alone and (b) from the combined teachings of Danti and Klygis and Benno.

We shall first consider Danti alone. Reading this reference, even in the light of all the contentions of the examiner, the board, and the Solicitor for the PTO, it is entirely clear to us that Danti does not even hint at the problem appellant sought to solve, the instability of a six-pack or eight-pack surrounded horizontally by an elastic plastic band. Danti would not have encountered the problem because it would not have appeared in what he was doing. He did not use a horizontal elastic band. He stacked his case of 24 cans on a rectangular platform or tray, 12 over 12, and then enveloped the stack in two wide webs of film wrapped *vertically* around both the stack and the platform, totally enclosing all four sides as in a box. Danti does not disclose elastic *tubing*. He does not disclose six-packs or eight-packs. He wraps a sheet of film "under tension" around the wider side of the stack and he heat seals it on opposite sides along two seams. He does not say whether the heat sealing is before or after wrapping. He similarly wraps a second narrower sheet vertically around the other two sides, and heat seals it at some undisclosed time. He also suggests an alternative in which the outer wrapping is the wider one.

To summarize our view of the Danti patent as a reference, we find nothing in it in common with appellant's claimed invention other than the fact that it discloses beverage cans wrapped in plastic film apparently similar to the film used by appellant. The stack of cans is different and the wrapping is different. Danti uses a platform which appellant does not use and does not deal with the problem appellant deals with. What Danti does disclose could not possibly have made appellant's invention obvious. The examiner did not contend that it did.

The board, nevertheless, reached the opposite conclusion by what we consider to be a plainly indefensible line of reasoning. Danti's claim 1, the board said, "is broad enough to read on a package with the inner web encircling the containers in a horizontal direction and the outer web encircling the containers in a vertical direction...."

**1346**

That is appellant's claimed invention, in major part. Therefore, reasoned the board, that configuration would have been obvious from Danti, which is a non sequitur.

■ Samuel F.B. Morse, the inventor of the telegraph, had a patent thereon, issued in 1840, containing a claim (which the Supreme Court held invalid) which was broad enough to read on the modern Telex. *See O'Reilly v. Morse,* 56 U.S. (15 How.) 62, 112, 14 L.Ed. 601 (1853). By the board's reasoning, Morse's telegraph patent therefore would have made the Telex obvious. The scope of a patent's claims determines what infringes the patent; it is no measure of what it discloses. A patent discloses only that which it describes, whether specifically or in general terms, so as to convey intelligence to one capable of understanding. While it is true, as the Solicitor suggested at oral argument, that "a claim is part of the disclosure," that point is of significance principally in the situation where a patent application as filed contains a claim which specifically discloses something not disclosed in the descriptive part of the specification (claims being technically part of the "specification," 35 USC 112, 2d par.), in which case the applicant may amend the specification without being charged with adding "new matter," within the meaning of § 132. *See* 37 CFR 1.118. ("All amendments to the specification, including the claims, and the drawings filed after the filing date of the application *must conform to at least one of them* as it was at the time of filing the application." (Emphasis ours.)) But that is not the situation here. Danti's claim 1 does not disclose any structure additional to what the Danti specification discloses.*

■ For the above reasons, we hold that the board erred in relying on Danti's claim 1 in deciding that appellant's claims would

have been obvious from that reference alone and also in reaching that conclusion.

■ We turn now to the board's affirmance of the examiner's rejection on a combination of both references. The examiner did not find Danti alone sufficient ground for an obviousness rejection; he relied only on the disclosure of two tensioned film wraps arranged at right angles to one another, which he asserted produced a package of high integrity, while disregarding Danti's use of a supporting platform or tray not used by appellant. He then relied on Klygis and Benno for their disclosure of their tensioned horizontal tube and then said that to combine these two teachings "is well within the scope of the respective inventions," whatever that may mean. Since we cannot determine that it means anything, we advert to the final rejection where the examiner clearly stated it to be his position that

> It would be obvious to one of ordinary skill in the art to modify the package of Danti by employing a longitudinal tensioned band encompassing the containers as taught by Klygis et al. figure # 7.

Fig. 7, supra, is the Klygis and Benno package of four large plastic bottles with the four-spoked handle device 136. This is where the examiner also relied on the Klygis and Benno patent's statement that their invention could be adapted for use with any array such as "2, 3, 4, 6, or any other." No reason is suggested why anyone would be led to "modify" Danti in the manner suggested. Packaging a case of 24 cans and two or four 2-liter bottles present different problems requiring different solutions. That is also the case with appellant's problem of stabilizing a six- or eight-pack, to which his claims are limited. As for the typical "unlimiting" statement suggesting that the Klygis and Benno invention could

---

* Claim 1 of the Danti patent reads as follows:
1. A package comprising
(a) an assembly of container articles to be packaged
(b) a first retaining web positioned around a set of four sides of said assembly of said articles

(c) a second retaining web positioned snugly around a different set of four sides which include the top and bottom of said assembly, and wherein said retaining webs are an [sic] stretch polymer film which forms a handle means to lift said assembly of containers when subjected to the weight of said articles.

be adapted to a six-pack, the demonstrable fact is that when it was tried by Benno the result was a very unstable package and he had to invent a solution to that problem, in which he was successful and which he now claims. Neither reference hints at his solution.

The Solicitor argues that the instability of a six-pack with only one elastic band as in Klygis and Benno, is a mere assertion of the appellant "not supported by any evidence of record." This is not true. Evidence was produced before the examiner and the same was produced before us at oral argument. According to the examiner's Answer, Benno gave him a demonstration. We quote what the examiner said about it:

> Applicant presented a sample of the packaging array of figures 1 and 2 containing bottles. The array was placed on a flat surface, e.g. a desk, and applicant completely severed tube 12. Applicant then manipulated the array to a diamond configuration showing the possibility of such configuration in the array. It is noted that the package maintained its configuration after severing of tube 12 and *required manipulation by applicant to achieve the altered diamond configuration.* [Emphasis ours.]

Evidently on this basis the examiner chose to ignore the evidence and so did the board. We have had the opportunity to consider the same physical phenomena. Of course the array maintains its configuration when sitting on a desk! It would do that if it were nothing but six unrestrained bottles. Its instability can be seen only when some external force is applied and it takes very little to cause the array to jump, because it is under tension, into an undesirable shape, not necessarily the "diamond configuration." A six-pack is supposed to withstand some rough handling. This court is not disposed to ignore what it can observe with its own eyes and determine with its own hands for want of some "expert" to testify

about it or some affiant to put the obvious down on paper over his notarized signature. As the CCPA had occasion to say in several Customs opinions, a sample is a potent witness. *United States v. The Twin Wintons,* 535 F.2d 636, 63 CCPA 84, 89 (1976). This court does not decide fact issues *de novo. In re Caveney,* 761 F.2d 671, 226 USPQ 1, 2–3 (Fed.Cir.1985). Were this a fact *issue* open for determination respecting instability, the court would remand to the PTO with instructions that it make such determination. Where, as above indicated, there is no such issue because the PTO, if it considered the evidence, would necessarily have to find that a six-pack with one elastic band is unstable, the interests of judicial economy and the avoidance of an undue burden on the parties militate against a remand.

We express the same sentiments about the Solicitor's argument that "no evidence comparing the stability of either the Danti or Klygis [and Benno] packages is of record." Neither reference has a word to say about the instability of a six- or eight-pack under the tension of a horizontal elastic band. This is not a situation calling for comparative tests, or a showing of "unexpected results," to which the Solicitor has referred. There is no prima facie obviousness to be overcome and hence no need for that type of evidence.

For the foregoing reasons, the decision of the board affirming the rejection of claims 1, 3–6, and 8–13 is *reversed.*

REVERSED.

BENNETT, Circuit Judge, concurs in the result.