**In re Randall J. WRIGHT.**

No. 87–1464.

United States Court of Appeals,
Federal Circuit.

May 24, 1988.

Robert W. Slater, Jones, Day, Reavis & Pogue, Chicago, Ill., for appellant. With him on the brief was Robert L. Lindgren, Chicago, Ill.

Lee E. Barrett, Associate Sol., Office of the Sol., of Arlington, Va., for appellee. With him on the brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol., Washington, D.C.

Before FRIEDMAN, NEWMAN, and MAYER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The judgment of the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office, rejecting claims 1 through 8 of patent application Serial No. 399,850 of Randall J. Wright for "Level Vial with Extended Pitch Range", is reversed.

### The Invention

Instruments that are commonly called carpenter's levels have long been known. They use small liquid-filled transparent vials with an entrained gas bubble; the vials function by gravity, the bubble automati-

cally seeking the highest point within the vial. The vial is attached to a support, such that when the surface on which the support is placed is level, the bubble is centered. Thus, the position of the bubble shows the orientation of the vial and of the support.

Levels in common use today are made from barrel-shaped vials, mounted so that the bubble may be viewed from either side of the vial. An example of a barrel-shaped vial set in a molded plastic housing is shown in Vaida U.S. Patent No. 3,871,109, of record:

These levels of the prior art are limited in their pitch measuring [1] capability because of the limited amount of curvature that can be formed in the molded barrel vial shape.

The Wright invention is a level-measuring instrument that has an increased range of pitch measurement capability, yet retains the advantages of the barrel vials of the prior art. Claim 1 is representative:

1. A level vial comprising a body having a bore formed with a barrel shaped portion having opposed ends and wherein the barrel curvature is defined by a first radius of curvature,

the barrel shaped portion of the bore having a cross-sectional dimension generally decreasing from the center thereof in axially opposed directions towards the ends thereof,

an axially elongated core member disposed within the bore and between the opposed ends thereof in coaxial relationship with the barrel shaped portion of the body and having a maximum cross-sectional dimension and having a second radius of curvature exceeding that of the

first radius of curvature of the barrel shaped bore portion,

a quantity of fluid disposed within the bore and being insufficient to fill the bore and to provide a bubble therein having a dimension sufficient to simultaneously contact the surfaces of the barrel shaped bore portion and the core member,

means for hermetically sealing the bore to contain the fluid and to maintain the bubble therein,

the vial body having a transparent portion and indicator means associated therewith to permit visual bubble observation and for indicating preselected positions of the bubble in the vial

and wherein the surfaces of the barrel shaped bore portion and the core member coact with the bubble to produce gradual bubble movement axially within the barrel shaped bore portion without abrupt bubble acceleration and while providing a wide range of visually observable angular measures.

The Wright structure is illustrated as follows:

---

**1.** The pitch is the degree to which a given surface is not level. "Pitch" vials measure a range of pitch angles.

According to the Wright disclosure, by combining a core pin (46) and a barrel vial (14), the indicator bubble (22) does not move as far along the barrel with a given change in pitch, compared with the barrel vials of the prior art. Wright illustrates this phenomenon in his specification (showing a pitch change of ⅜ inch per 12 inches):

Thus the Wright level can measure greater changes of pitch before the bubble reaches the end of the vial.

### The Rejection

The Board agreed with Wright that his claimed combination was new. However, because it was known to place a core pin in a cylindrical vial in order to increase the visibility of the bubble, as shown in Bishop U.S. Patent No. 771,803:

the Board held that it would have been obvious to construct a level having a core pin in the barrel-shaped vial of Vaida, irrespective of the purpose. The Commissioner on appeal argued that the Bishop and Vaida references presented, in combination, a prima facie case of unpatentability, stating:

[A] claimed invention may be unpatentable if it would have been obvious for reasons suggested by the prior art, even though those reasons may be different from the reasons relied upon by the inventor and may result in a different advantage.

The PTO position is that since it would have been obvious to make the Wright combination in order to improve visibility of the bubble, it is immaterial that Wright's combination improves pitch measurement.

### Discussion

The Commissioner argues that if it is obvious to combine the teachings of prior

art references for any purpose, they may be combined in order to defeat patentability of the applicant's admittedly new structure. The PTO states that "a claimed invention may be unpatentable if it would have been obvious for reasons suggested by the prior art, even though those reasons may be different from the reasons relied upon by the inventor and may result in a different advantage." The PTO position is that it is irrelevant that Wright's structure was for a purpose, and has properties, that are neither obtainable from the prior art structures, nor suggested in the prior art. In this lies the PTO's error.

■ We repeat the mandate of 35 U.S.C. § 103: it is the invention as a whole that must be considered in obviousness determinations. The invention as a whole embraces the structure, its properties, and the problem it solves. *See, e.g., Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1025, 226 USPQ 881, 886 (Fed.Cir. 1985) ("In evaluating obviousness, the hypothetical person of ordinary skill in the pertinent art is presumed to have the 'ability to select and utilize knowledge from other arts reasonably pertinent to [the] particular problem' to which the invention is directed"), *quoting In re Antle,* 444 F.2d 1168, 1171–72, 58 CCPA 1382, 170 USPQ 285, 287–88 (CCPA 1971); *In re Antonie,* 559 F.2d 618, 619, 195 USPQ 6, 8 (CCPA 1977) ("In delineating the invention as a whole, we look not only to the subject matter which is literally recited in the claim in question ... but also to those properties of the subject matter which are inherent in the subject matter *and* are disclosed in the specification") (emphasis in original).

■ The determination of whether a novel structure is or is not "obvious" requires cognizance of the properties of that structure and the problem which it solves, viewed in light of the teachings of the prior art. *See, e.g., In re Rinehart,* 531 F.2d 1048, 1054, 189 USPQ 143, 149 (CCPA 1976) (the particular problem facing the inventor must be considered in determining obviousness); *see also Lindemann Maschinenfabrik GmbH v. American Hoist and Derrick Co.,* 730 F.2d 1452, 1462, 221

USPQ 481, 488 (Fed.Cir.1984) (it is error to focus "solely on the product created, rather than on the obviousness or nonobviousness of its creation") (quoting *General Motors Corp. v. U.S. Int'l Trade Comm'n,* 687 F.2d 476, 483, 215 USPQ 484, 489 (CCPA 1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983)).

■ Thus the question is whether what the inventor did would have been obvious to one of ordinary skill in the art attempting to solve the problem upon which the inventor was working. *Rinehart,* 531 F.2d at 1054, 189 USPQ at 149; *see also In re Benno,* 768 F.2d 1340, 1346, 226 USPQ 683, 687 (Fed.Cir.1985) ("appellant's problem" and the prior art "present different problems requiring different solutions").

The problem upon which Wright was working was improving the pitch-measuring capability of the level, not the visibility of the bubble. The PTO, having conceded that Wright's structure was unobvious for his intended purpose, erred in holding that this was not relevant. The problem solved by the invention is always relevant. The entirety of a claimed invention, including the combination viewed as a whole, the elements thereof, and the properties and purpose of the invention, must be considered.

■ Factors including unexpected results, new features, solution of a different problem, novel properties, are all considerations in the determination of obviousness in terms of 35 U.S.C. § 103. When such factors are described in the specification they are weighed in determining, in the first instance, whether the prior art presents a prima facie case of obviousness. *See, e.g., In re Margolis,* 785 F.2d 1029, 1031, 228 USPQ 940, 942 (Fed.Cir.1986) (comparative data in the specification must be considered in PTO determination of unexpected results, as part of "the entire body of evidence ... which must be weighed in the first instance by the PTO.") When such factors are brought out in prosecution before the PTO, they are considered in determining whether a prima facie case, if made based on the prior art, has been rebutted. *See, e.g., In re Pia-*

*secki,* 745 F.2d 1468, 1472, 223 USPQ 785, 789 (Fed.Cir.1984) (rebuttal evidence is considered along with all other evidence of record). In either case, the requisite view of the whole invention mandates consideration of not only its structure but also its properties and the problem solved.

Applicant Wright agrees that he has combined old elements. The Commissioner agrees that Wright has achieved a new combination, and that the result obtained thereby is not suggested in the references. The patentability of such combinations is of ancient authority. *See, e.g., Prouty v. Draper,* 41 U.S. (16 Pet.) 336, 341, 10 L.Ed. 985 (1842); *Eames v. Godfrey,* 68 U.S. (1 Wall.) 78, 79–80, 17 L.Ed. 547 (1863); *Gill v. Wells,* 89 U.S. (22 Wall.) 1, 25, 22 L.Ed. 699 (1874); *see also* H.T. Markey, *Why Not the Statute?,* 65 J.Pat.Off.Soc'y 331, 333–34 (1983) ("virtually all inventions are 'combinations', and ... *every* invention is formed of 'old elements'.... Only God works from nothing. Man must work with old elements").

The PTO position that the claimed structure is prima facie obvious is not supported by the cited references. No reference shows or suggests the properties and results of Wright's claimed structure, or suggests the claimed combination as a solution to the problem of increasing pitch measurement capacity. It is not pertinent whether Wright's new structure also has the prior art attribute of increased visibility of the bubble, for that is not his invention.

The Commissioner on appeal defends the fact that the Board and the examiner never reached this analysis. The Board relied on *In re Wiseman,* 596 F.2d 1019, 201 USPQ 658 (CCPA 1979), to support the Board's statement:

> If the claimed subject matter would have been obvious from the references, it is immaterial that the references do not state the problem or advantages ascribed thereto by appellant.

*Wiseman* does not support the generalization that the Board attributes to it. In *Wiseman* the prior art reference showed a similar problem and suggested a similar solution to that of the applicant. Specifi-

cally, the prior art showed a disc brake having grooves for the purpose of venting dust generated during use; the applicant showed a disc brake having grooves for the purpose of venting steam generated during use. The applicant asserted no results or properties that were not fairly suggested by the prior art. The court's discussion in *Wiseman* must be viewed in context, and as with all section 103 decisions, judgment must be brought to bear based on the facts of each case.

### Conclusion

The rejection of claims 1 through 8 was in error. The Board's decision is

REVERSED.