**In re Chester W. NEWELL.**

**No. 89–1332.**

United States Court of Appeals,
Federal Circuit.

Dec. 12, 1989.

Thomas Schneck, Law Offices of Thomas Schneck, San Jose, Cal., argued for appellant.

John Dewhirst, Associate Sol., Office of the Solicitor, Arlington, Va., argued for appellee. With him on the brief was Fred E. McKelvey, Sol.

Before MARKEY, Chief Judge,
BALDWIN, Senior Circuit Judge, and
NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

The decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences (Board) dated September 28, 1988, affirming the examiner's rejection of claims 16–41, all of the claims of patent application Serial No. 754,673 of Chester W. Newell, under 35 U.S.C. § 103, is reversed.

*The Invention*

The invention is a tape drive system for an American National Standard Institute (ANSI) compatible data cartridge or cassette. Claim 16 is representative:

16. For tape data cartridges of the type having a pair of tape rolls mounted in reversible tape supply and takeup relation with a tape path there-between, a capstan and first belt guides spaced apart from the tape rolls, but disposed in said tape path, with a first belt having an inside surface trained about the first belt guides and the capstan and having an outside surface in contact with the tape for providing motive power to the tape, a drive comprising,

second belt guides spaced proximate to the capstan position and a driven power wheel independently mounted of the mounting for said cartridge tape rolls, and

a second belt having an inside surface trained about the second belt guides and the driven power wheel and having an outside surface contacting the capstan over an angular portion of the capstan surface, said second belt frictionally engaging said capstan whereby the second belt indirectly drives the tape by transferring power through the capstan to the first belt and may be removably brought into contact with the capstan.

As illustrated, the claimed tape drive system uses a power belt (31) to frictionally engage and drive the cartridge capstan (13). The tape data cartridge (11) is removable from the tape drive and is not part of the claimed invention. The cartridge includes a tape supply roll (17) and a takeup roll (19) with an intermediate tape portion (27) extending around two cartridge tape guides. The tape rolls are driven within the cartridge by an endless loop drive belt (15) trained about the cartridge capstan (13). The drive belt (15) frictionally engages the tape rolls over a substantial arc of their peripheral surfaces. A tensioning belt (25) is trained about the belt guide members (21, 23) for maintaining proper tension in the drive belt (15) and hence in the tape (27). Figure 1 of Newell's patent application is illustrative:

Figure 1

Mr. Newell's tape drive system, characterized as a "belt-to-capstan" drive, differs from the prior art "wheel-to-wheel" or "capstan-to-capstan" drives and other known drives for tape cartridges. The essential difference relates to the external drive means used to transfer power to the cartridge capstan (13) which forms part of tape transfer system within the data cartridge. In a wheel-to-wheel or capstan-to-capstan drive, power is transferred to the cartridge capstan (13) for tape movement by contact with an external drive capstan; the external drive capstan turns the cartridge capstan (13) which moves the cartridge drive belt (15), and in turn drives the tape rolls (17 and 19).

Instead of the capstan-to-capstan power transfer shown in the prior art, the power transfer in appellant's drive system takes place from the external power belt (31) to the cartridge capstan (13). This provides a mechanical advantage of improved power transfer over conventional capstan-to-capstan drives due to the increased surface contact area of the power belt with the capstan. The advantage is proportional to the wrap angle of the power belt (31) on

the capstan (13) and to the coefficient of friction between the belt and the capstan. Newell states that his system has a calculated maximum tape velocity of 75 inches per second, as compared with the 30 inches per second of the prior art capstan drives.

### Discussion

It is uncontested that Newell's structure is new. Newell states, in the Board's words, that "he is the first to drive a data cartridge of the Von Behren/Newell type (ANSI) standard cassette with a belt."

The Board affirmed the examiner's rejection of claims 16 through 41 on the basis of three reference patents, United States Patent No. 2,288,983 to Weiss, United States Patent No. 3,692,255 to Von Behren, and an earlier patent of Newell, United States Patent No. 4,172,569.

The Newell and Von Behren patents teach conventional capstan-to-capstan drive systems for ANSI type data tape cartridges. The tape is moved from roll to roll in the cartridge by an internal drive belt which is turned by the cartridge capstan. The cartridge capstan is in turn powered by contact with an external drive capstan. Motive power is not directly applied to the tape.

The Weiss patent describes a device for recording and playing information on an endless loop of recording tape. The tape is driven by a tape feeding belt which is trained about two spools that guide the belt adjacent to the surface of a freely spinning roller. The tape passes between the roller and the tape feeding belt, with the belt frictionally engaging the tape. The roller provides a backing surface for the tape, making it possible for the belt to apply pressure to and drive the tape. In short, motive power in the Weiss system is transferred directly from the feeding belt to the tape.

The Board held that Newell had simply combined various elements of known tape drives, and that it would have been obvious to do so because it was "a mere substitution of one conventional tape capstan drive for another". Newell argues, however, that the elements of the prior art are not simply physically combined and that his indirect power transfer from the power belt through the capstan to the drive belt is not shown or fairly suggested in the prior art.

Newell correctly states that the roller in the Weiss reference does not have a power transfer function. Newell also states, and the Solicitor does not dispute, that his new drive system achieves significantly enhanced power transmission to the tape, as compared with the prior art. Although the Solicitor argues that it is inherent that a belt drive will provide greater surface contact with the cartridge capstan, and thus better power transfer, a retrospective view of inherency is not a substitute for some teaching or suggestion which supports the selection and use of the various elements in the particular claimed combination. *Smithkline Diagnostics v. Helena Laboratories Corp.*, 859 F.2d 878, 886–87, 8 USPQ2d 1468, 1475 (Fed.Cir.1988). It is well established that in deciding that a novel combination would have been obvious, there must be supporting teaching in the prior art. "That which may be inherent is not necessarily known. Obviousness cannot be predicated on what is unknown." *In re Spormann*, 363 F.2d 444, 448, 53 CCPA 1375, 1380, 150 USPQ 449, 452 (1966).

There is no suggestion or motivation in the prior art to combine these elements as combined by Newell, in order to obtain enhanced tape velocity and acceleration. *See In re Laskowski*, 871 F.2d 115, 117, 10 USPQ2d 1397, 1398–99 (Fed.Cir.1989); *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1143, 227 USPQ 543, 551 (Fed. Cir.1985). The motivation to make a specific structure "is not abstract, but practical, and is always related to the properties or uses one skilled in the art would expect the [structure] to have, if made." *In re Gyurik*, 596 F.2d 1012, 1018, 201 USPQ 552, 557 (CCPA 1979). *See also Fromson v. Advance Offset Plate*, 755 F.2d 1549, 1556, 225 USPQ 26, 31 (Fed.Cir.1985) ("The critical inquiry is whether 'there is something in the prior art as a whole *to suggest* the desirability, and thus the obviousness, of

making the combination.' ") (Emphasis in original).

In *In re Wright*, 848 F.2d 1216, 6 USPQ2d 1959 (Fed.Cir.1988), we discussed the need, in comparing the differences between the structure and properties taught in the prior art, and those of the applicant's invention, to include consideration of the problem solved by the inventor. "The determination of whether a novel structure is or is not 'obvious' requires cognizance of the properties of that structure and the problem which it solves, viewed in light of the teachings of the prior art." *Id.* at 1219, 6 USPQ2d at 1961–62. See *In re Rothermel*, 276 F.2d 393, 397, 47 CCPA 866, 873, 125 USPQ 328, 332 (1960):

> Where the invention for which a patent is sought solves a problem which persisted in the art, we must look to the problem as well as to its solution if we are to properly appraise what was done and to evaluate it against what would be obvious to one having the ordinary skills of the art.

Applying this precedent to Newell's invention, there is no teaching or suggestion in the prior art that the belt drive of Weiss should be applied to the capstan of an ANSI type of tape cartridge in the manner done by Newell, in order to achieve the significant advantageous property obtained by Newell.

On consideration of all the evidence of record, we conclude that Newell's claims meet the requirements of section 103. The Board's decision to the contrary is

REVERSED.